UNITED STATES, Appellant

v.

RAYMOND D. CLAY, Hospitalman, U. S. Naval Reserve, Appellee

1 USCMA 74, 1 CMR 74

No. 49

Decided November 27, 1951

MAJ. Charles H. LeClaire, USMC, for Appellant.
LCDR. Robert H. McCarthy, USN, for Appellee.
LT. Frederic T. Suss, USN, Amicus Curiae.

GEORGE W. LATIMER, Judge:

. A certificate from The Judge Advocate General of the Navy in accordance with the Uniform Code of Military Justice, Article 67(b)(2) (Act of May 5, 1950, 64 Stat. 108, 50 U. S. C. §§ 551–736) brings this case before us. Accused was tried by a special court-martial on two charges, one for violation of Article 8(1), and the other for violation of Article 22(a), of the Articles for the Government of the Navy. The charge under the first mentioned article was for an alleged disorder, while the one charged under the latter was for improperly wearing the uniform. The offenses were committed prior to the effective date ▇▇▇▇▇ ■ of the Uniform Code of Military Justice, supra, but the arraignment was not held until after that date. Under the provisions of Executive Order No. 10214, dated February 8, 1951, it was permissible to prefer the charges under the Articles for the Government of the Navy, but because the accused was not arraigned before May 31, 1951, the trial procedure was governed by the new code. (See United States v. Merritt, 1 USCMA 56, 1 CMR 56, decided November 20, 1951).

Accused pleaded guilty to the charge involving the wearing of an improper uniform and not guilty to the charge of disorder. After the presentation of evidence, and after both parties had rested, the president closed the court to consider the findings. He, however, neglected to charge the court on the elements of the offense, the presumption of innocence, and the burden of proof, as required by the Uniform Code of Military Justice, Article 51(c), supra, and Paragraph 73(b), Manual for Courts-Martial, United States, 1951. The court found the accused guilty on both charges. After the findings of guilty were announced, but prior to sentence, the defense counsel pointed out the failure of the president to instruct in accordance with the above cited article and paragraph. The court, after considering the point raised, conceded the possibility of errors in procedure but instead of correcting them overruled the objection, sentenced the accused, and attached a letter of explanation to the record for the information of the convening authority. The convening authority concluded that the error was not prejudicial to the substantial rights of the accused, and the board of review affirmed the conviction by a written decision which reached the same conclusion. The Judge Advocate General of the Navy then certified the case to this Court for a decision on that question.

We can eliminate from further consideration the charge dealing with improperly wearing the uniform, for the reason that in the case of United States v. Lucas, 1 USCMA 19, 1 CMR 19, decided November 8, 1951, we held that when an accused, after a full and fair explanation of the effect of a guilty plea, nevertheless insists on pleading guilty to a charge, his rights are not substantially prejudiced by the failure to instruct as required by the Code and Manual. This opinion will, therefore, deal only with the charge which alleges disorderly conduct in violation of Article 8(1), Articles for the Government of the Navy.

This article provides as follows:

"Article 8. Persons to whom applicable. Such punishment as a court martial may adjudge may be inflicted on any person in the Navy—

"First (Scandalous conduct). Who is guilty of profane swearing, falsehood, drunkenness, gambling, fraud, theft, or any other scandalous conduct tending to the destruction of good morals;" (34 U.S.C.A. § 1200)

The charge, as set forth on the charge sheet, was couched in the following language:

"Violation of the Articles for the Government of the Navy, Article 8 (1)

"Specification—In that Raymond D. Clay, hospitalman, U. S. Naval Reserve, U. S. S. Haven, on active duty, did, at Pusan, Korea, at or about 2000 hours 25 May 1951, par-

**76**

ticipate in a breach of the peace by wrongfully engaging in a struggle on a street in Pusan, Korea with some Korean Nationals, to wit: one Yun Gong Soo, and one Han Sang Joon, and other persons, names unknown."

The accused entered a plea of not guilty and under the uniform holdings of both civilian and military courts this put in issue every material allegation of the charge and placed the burden upon the government to prove beyond a reasonable doubt all the essential elements of the offense. In addition, it permitted the presumption of innocence to weigh in his favor and required that any reasonable doubt must be resolved against his guilt. These are time-honored benefits called into use by a plea of not guilty.

The board of review in its decision went to some length to avoid the effect of the error by attempting to show that there was no substantial right of the accused materially prejudiced because there was competent evidence to establish all elements of the offense, the evidence was of such quality and quantity that the presumption of innocence was overcome, and the evidence established beyond a reasonable doubt the guilt of the accused. We do not accept the reasoning used by the board. But, before we touch that question, we look to the acts of Congress to determine whether it has declared that there are fundamental rights inherent in the trial of military offenses which must be accorded to an accused before it can be said that he has been fairly convicted.

There are certain standards in the military accusatorial system which have been specifically set by Congress and which we must demand be observed in the trials of military offenses. Some of these are more important than others, but all are of sufficient importance to be a significant part of military law. We conceive these rights to mold into a pattern similar to that developed in federal civilian cases. For lack of a more descriptive phrase, we label the pattern as "military due process" and then point up the minimum standards which are the framework for this concept and which must be met before the accused can be legally convicted. The Uniform Code of Military Justice, supra, contemplates that he be given a fair trial and it commands us to see that the proceedings in the courts below reach that standard.

Generally speaking, due process means a course of legal proceedings according to those rules and principles which have been established in our system of jurisprudence for the enforcement and protection of private rights. For our purposes, and in keeping with the principles of military justice developed over the years, we do not bottom those rights and privileges on the Constitution. We base them on the laws as enacted by Congress. But, this does not mean that we can not give the same legal effect to the rights granted by Congress to military personnel as do civilian courts to those granted to civilians by the Constitution or by other federal statutes.

As we have stated in previous opinions, we believe Congress intended, in so far as reasonably possible, to place military justice on the same plane as civilian justice, and to free those accused by the military from certain vices which infested the old system. Believing this, we are required to announce principles consistent therewith.

A cursory inspection of the Uniform Code of Military Justice, supra, discloses that Congress granted to an accused the following rights which parallel those accorded to defendants in civilian courts: To be informed of the charges against him; to be confronted by witnesses testifying against him; to cross-examine witnesses for the government; to challenge members of the court for cause or peremptorily; to have a specified number of members compose general and special courts-martial; to be represented by counsel; not to be compelled to incriminate himself; to have involuntary confessions excluded from consideration; to have the court in-

**77**

structed on the elements of the offense, the presumption of innocence, and the burden of proof; to be found guilty of an offense only when a designated number of members concur in a finding to that effect; to be sentenced only when a certain number of members vote in the affirmative; and to have an appellate review.

By mentioning the foregoing rights and benefits, we have not intended to make the list all-inclusive, nor to imply others might not be substantial. We have merely enumerated those which are of such importance as to be readily catalogued in that category. In addition, we disclaim any intent to classify these as jurisdictional or non-jurisdictional. Under our powers as an appellate court we can reverse for errors of law which materially prejudice the substantial rights of the accused, and we need go no further than to hold that the failure to afford to an accused any of the enumerated rights denied him military due process and furnishes grounds for us to set aside the conviction.

Previously adjudicated federal court cases are a source from which we can test the prejudicial effect of denying an accused the rights we have set out as our pattern of "military due process." It is impracticable to mention and cite from cases dealing with some of the benefits we have grouped together, so we will quote from a few and then treat with those dealing directly with failure to instruct the jury (court-martial) properly.

In the case of Watts v. Indiana, 338 U. S. 49, 93 L ed 1801, 69 S Ct 1347, the United States Supreme Court considered the impact of an involuntary confession on a conviction. Mr. Justice Frankfurter, speaking for the Court, stated as follows (pp. 54 and 55):

"The requirement of specific charges, their proof beyond a reasonable doubt, the protection of the accused from confessions extorted through whatever form of police pressures, the right to a prompt hearing before a magistrate, the right to assistance of counsel, to be supplied by govern-ment when circumstances make it necessary, the duty to advise an accused of his constitutional rights—these are all characteristics of the accusatorial system and manifestations of its demands. . . ."

"In holding that the Due Process Clause bars police procedure which violates the basic notions of our accusatorial mode of prosecuting crime and vitiates a conviction based on the fruits of such procedure, we apply the Due Process Clause to its historic function of assuring appropriate procedure before liberty is curtailed or life is taken."

In a per curiam opinion in the case of Waley v. Johnston, 316 U. S. 101, 86 L ed 1302, 62 S Ct 964, the Court held a conviction on a plea of guilty coerced by a federal law enforcement officer as wanting in due process of law. The Court therein announced the following principle (p. 104):

"For a conviction on a plea of guilty coerced by a federal law enforcement officer is no more consistent with due process than a conviction supported by a coerced confession. Bram v. United States, 168 U. S. 532, 543; Chambers v. Florida, 309 U. S. 227. And if his plea was so coerced as to deprive it of validity to support the conviction, the coercion likewise deprived it of validity as a waiver of his right to assail the conviction. Johnson v. Zerbst, 304 U. S. 458, 467."

In the case of In re Oliver, 333 U. S. 257, 92 L ed 682, 68 S Ct 499, that Court held that the secrecy of Oliver's trial for criminal contempt was a violation of the due process clause. Mr. Justice Black delivered the opinion of the Court and stated (p. 273):

"We further hold that failure to afford the petitioner a reasonable opportunity to defend himself against the charge of false and evasive swearing was a denial of due process of law. A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights in-

clude, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

Again, in the case of Uveges v. Pennsylvania, 335 U. S. 437, 93 L ed 127, 69 S Ct 184, the Court had before it the case of a seventeen-year-old youth who pleaded guilty to four counts of an indictment. The record showed no attempt on the part of the court to make him understand the consequence of the plea and the accused claimed he was denied counsel in the proceedings leading up to his conviction. Mr. Justice Reed, speaking for the Court, stated (pp. 440–441):

"Some members of the Court think that where serious offenses are charged, failure of a court to offer counsel in state criminal trials deprives an accused of rights under the Fourteenth Amendment. They are convinced that the services of counsel to protect the accused are guaranteed by the Constitution in every such instance. See Bute v. Illinois, 333 U. S. 640, dissent, 677–79. Only when the accused refuses counsel with an understanding of his rights can the court dispense with counsel. Others of us think that when a crime subject to capital punishment is not involved, each case depends on its own facts. See Betts v. Brady, 316 U. S. 455, 462. Where the gravity of the crime and other factors—such as the age and education of the defendant, the conduct of the court or the prosecuting officials, and the complicated nature of the offense charged and the possible defenses thereto—render criminal proceedings without counsel so apt to result in injustice as to be fundamentally unfair, the latter group holds that the accused must have legal assistance under the Amendment whether he pleads guilty or elects to stand trial, whether he requests counsel or not. Only a waiver of counsel, understandingly made, justifies trial without counsel.

. . . . .

"Under either view of the requirements of due process, the facts in this case required the presence of counsel at petitioner's trial. He should not have been permitted to plead guilty without an offer of the advice of counsel in his situation."

We can see no good reason why the principles announced in the foregoing cases should not be transplanted into the military system; and, in so far as applicable to our system, we adopt them. True, we need not concern ourselves with the constitutional concepts, but if the denial of these benefits to a defendant is of sufficient importance to justify a civilian court in holding that it denied him due process, it should be apparent to a casual reader that denial of a similar right granted by Congress to an accused in the military service constitutes a violation of military due process. By adopting these principles we impose upon military courts the duty of jealously safeguarding those rights which Congress has decreed are an integral part of military due process.

Aside from the constitutional due process concept threading its way through federal cases, we ▮▮▮▮▮▮ ▮ find federal appellate courts passing directly on the prejudicial error of failure of trial judges properly to instruct a jury. We have not found any reported cases in which a court refused to give any instructions, but there are numerous in which the instructions were so inadequate and incomplete that it could be said the same result was reached. The United States Court of Appeals for the Third Circuit in the case of United States v. Levy, 153 F2d 995, considered a criminal case in which the court failed to inform the jury of the issues involved and the essentials of the crime for which the defendant was tried. In reversing the conviction, the court stated (p. 998):

"In the instant case the trial court's instructions to the jury did not contain the text of the applicable statute. They included no definite information as to the offense charged. Neither the provisions of the Price Control Act, the regulations under it, nor the substance of either, ever reached the jury. The court and counsel of both parties were thoroughly acquainted with the law which the

defendant was accused of violating, but there is nothing in the record showing that the jury was ever informed as to such prime requisite."

The United States Court of Appeals for the District of Columbia Circuit in Williams v. United States, 131 F2d 21, considered a case which involved the failure of a trial court to charge the jury on the presumption of innocence and the necessity of proving the defendant's guilt of the crime beyond a reasonable doubt. There are two important principles announced in this case, and we quote the language dealing with them (p. 22):

"We have always been proud that under our law the elements which go to make up a crime are definitely established. To insist that a jury be told what rape is, and, when circumstances require, what the included offenses are, in the eyes of the law, is not to demand meaningless ritual. The average man has some idea of what murder is, but we would not expect a judge to say, Jurors, you know what murder is, go and decide if this man is guilty of it. To say that the jury, under proper instruction, might not have found defendant guilty or might not have inflicted the death penalty is not to interfere with its judgment. We merely insist that the judgment of a jury be informed and be made under the safeguards of correct procedure.

. . . . .

"The jury must be told at least once, in some unequivocal language, that if it believes from the evidence that defendant is innocent, or if it believes from the evidence that the Government has not proved each and every element of the crime beyond a reasonable doubt, it must return a verdict of not guilty."

In Screws v. United States, 325 U. S. 91, 89 L ed 1495, 65 S Ct 1031, Mr. Justice Douglas, speaking for the court, announced in unmistakable language its duty to reverse a case when the jury was not instructed on the elements of the offense. He stated (p. 107):

"It is true that no exception was taken to the trial court's charge.

Normally we would under those circumstances not take note of the error. See Johnson v. United States, 318 U. S. 189, 200. But there are exceptions to that rule. United States v. Atkinson, 297 U. S. 157, 160; Clyatt v. United States, 197 U. S. 207, 221–222. And where the error is so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, we think it is necessary to take note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial. Whatever the degree of guilt, those charged with a federal crime are entitled to be tried by the standards of guilt which Congress has prescribed."

We may have belabored the importance of the question herein involved. If so, it is to impress on ▮ courts-martial the undesirability of short-cutting the plain mandate of Congress. To follow strictly the required procedure may at times seem unimportant, but the only way by which Congress can make certain what it deems important is by saying so in its legislative pronouncement. In this instance, it proclaimed that the giving of instructions was a valuable right, the court-martial crashed through that mandate, and now we are asked to say that right was unsubstantial. It was for Congress to set the rules governing military trials. It legislated on the subject and not without adequate consideration. We are not concerned with the wisdom of the enactment, but we might suggest that there are many reasons which may have prompted Congress to demand that instructions be given to members of courts-martial. It is reasonable to require that members trying an accused should not be permitted to deliberate upon the guilt of an accused without having been told the nature of the crime and the essential elements of the offense. It is necessary and desirable that the law be explained to them, that the law officer or president point out the issues involved, and that someone with authority and knowledge of the law bring into focus the relationship of the evidence to those issues. Unless the court is in some way limited

80

as to what are the essential elements, the members become unguided and unconfined. What evidence might be considered by them as relevant to establish the crime may be outside the limits of the charge and the material evidence influencing them might have no reasonable relationship to the elements of the offense. Moreover, assuming, as contended, that most members of a court-martial have a smattering knowledge of the law and do not need to be informed, Congress could reasonably demand that immediately before deliberating upon a finding those who know have their memory refreshed and those who do not be enlightened.

A conviction supported by a proceeding which is so lacking in correct procedure should fall of its own weight. However, we proceed one step further and point out why we believe the board of review erred in its appraisal of prejudice. We are not here concerned with the questions answered in the Lucas case, supra. There, the accused pleaded guilty and waived his right to demand the full protective safeguards accorded to him. Cast in the background of a plea of guilty with a full understanding of its consequences, the failure to instruct could not be prejudicial error. But, not so when the accused insists on his full measure of protection. An accused might waive some of the safeguards thrown around him but the court cannot waive them for him. ▪ The members of a court should not force a situation by taking away substantial benefits and then seek to have us justify their act by saying, in effect, "They are of little value, the evidence is such the court would have found him guilty anyway."

We cannot better set out reasons why the error materially prejudiced the substantial rights of the accused than did Mr. Justice Frankfurter in the case of Bruno v. United States, 308 US 287, 84 L ed 257, 60 S Ct 198. Speaking for the Court, he stated (pp. 293–294):

"A subsidiary question remains for determination. It derives from the Act of February 26, 1919, 40 Stat. 1181, 28 U. S. C. § 391, whereby appellate courts are under duty in criminal as well as civil cases to disregard 'technical errors, defects, or exceptions which do not affect the substantial rights of the parties.' Is the disregard of the right which Congress gave to Bruno an error, the commission of which we may disregard? We hold not. It would be idle to predetermine the scope of such remedial provision as § 391 by anticipating the myriad varieties of rulings made in trials and attempting an abstract, inclusive definition of 'technical errors.' Suffice it to indicate, what every student of the history behind the Act of February 26, 1919, knows, that that Act was intended to prevent matters concerned with the mere etiquette of trials and with the formalities and minutiae of procedure from touching the merits of a verdict. Of a very different order of importance is the right of an accused to insist on a privilege which Congress has given him."

What we have previously stated goes with like effect to the failure of the court to instruct on the presumption of innocence and the burden of proof. We are not impressed with the argument made by the board of review that it was clothed with authority to determine the sufficiency of the evidence and that it found the failure to instruct was not prejudicial because the evidence overcame the presumptions of innocence; that the elements were established beyond a reasonable doubt; and that it was satisfied the court or the board of review could not have made a finding other than that of guilty. Assuming without deciding that the evidence compels such a finding, we are, nevertheless, required to hold the error materially prejudiced the substantial rights of the accused, for the reason that we cannot say one of the historic cornerstones of our system of civil jurisprudence is merely a formality of military procedure. If Congress specifically grants what it considers to be a substantial right, we cannot deny the authoritative requirement by refusing to recognize it. There is impor-

**81**

tance attached to a benefit given by Congress, and the importance should not be diluted by an assumption that doubtful cases call for its protection but those appearing certain permit it to be discarded. By way of analogy, the government could as well argue that when an accused is denied the right of counsel, the error is not prejudicial because the evidence points unmistakenly toward the guilt of the accused. We must reject such contentions as their adoption would effectively eat away what Congress has declared to be military justice.

It is argued by counsel for the government that the members sitting on the court were Navy officers and were familiar with the rules of law that the accused is presumed innocent, that the burden of proof is upon the government, and that the elements of the offense must be established beyond a reasonable doubt; and, therefore, they need not be instructed as they considered these principles while deliberating upon their verdict. This is an assumption made by counsel, and it need be answered only to the extent of saying that members of Congress were undoubtedly aware of the standards of the service and may have known that members of courts-martial might have knowledge of these fundamental rights; but, nevertheless, and in spite of this knowledge, they made it mandatory that instructions be given for the benefit of the accused. Without question, Congress not only considered the qualifications of members of the court, but also considered the accused and in so doing directed that the court be instructed in his presence and in the presence of his counsel so that, if desired, objections could be made to the charge given or additional instructions could be requested. Moreover, we are not convinced all members of courts-martial are sufficiently versed in law to know all the elements of all offenses; but, even were we to make this assumption, the accused is an interested party and entitled to know to what extent the court-martial is controlled by law in considering his guilt.

In applying the concepts we have discussed to this case we find the trial of the accused far short of what is deemed essential to military justice. In the final analysis, the record as a whole convinces us that the accused was denied those necessary elements of military due process by which Congress sought to protect him.

The decision of the board of review is reversed.

Chief Judge QUINN and Judge BROSMAN concur.