UNITED STATES, Appellee

v.

SYLVESTER CLARK, Private, U. S. Army, Appellant

1 USCMA 201, 2 CMR 107

Decided February 29, 1952

MAJ. Sumner A. Brown, USA, for Appellant.

LT. COL. Paul J. Leahy, USA, and 1ST LT. Richard L. Brown, USA, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Petitioner was tried by general court-martial on the charge of voluntary manslaughter. The court found him guilty of negligent homicide and sentenced him to a bad conduct discharge, total forfeitures, and confinement for one year. The convening authority approved the conviction and sentence and the board of review in the office of The Judge Advocate General of the Army affirmed. The petition to this Court to review the record of the conviction was granted, the scope of our review being limited to the following issues: (1) Whether the evidence is sufficient in two particulars to support the conviction, namely, identity of the victim, and negligence in handling the weapon; and (2) whether the law officer's failure to instruct on the elements of the included offenses was error within the purview of Article 51, Uniform Code of Military Justice, 50 USC § 626. For the purpose of properly presenting our disposition of this case we also discuss the issue of whether the substantial rights of the accused were prejudiced.

Briefly stated, the facts out of which the fatality occurred are these: At about seven o'clock on the evening of April 1, 1951, petitioner, who was under the influence of intoxicating liquor, entered a drinking parlor in Taegu, Korea, in which five Koreans were present. He left almost immediately and returned in about four or five minutes. During his absence two shots, followed by some continuous firing, were heard outside the parlor. The petitioner was armed with a "grease gun" (45 calibre sub-machine gun), a weapon which was known to be easy to discharge, sensitive and dangerous. Upon re-entering the room he apparently attempted to clear the weapon. He removed the clip from the piece, pulled back the bolt, and allowed one cartridge to drop to the floor. He then pointed the gun to the floor, pressed the trigger and replaced the clip. The witness who testified that petitioner re-inserted the clip stated that he did not notice whether the bolt was retracted by petitioner after he replaced the clip. The gun was strapped around the waist of the petitioner, with the grip of the weapon on his right hip. During the time he was attempting to clear the gun the muzzle was pointed downward at about a 45 degree angle. Thereafter, the position of the gun changed and it was pointed in the direction of three Koreans. As petitioner moved among the three, one of them, noticing that the gun was pointed at him, objected and requested the petitioner, in Japanese, to move the muzzle of the gun so as not to point it at him. Petitioner, in some way not disclosed by the record, discharged the weapon while it was still pointed at the objector, and the slug hit the Korean in the lower abdomen. The subsequent facts and circumstances show that the man shot by the petitioner died as the result of the injury.

In view of the fact that we reverse the conviction on the second ground and permit a new trial, it is not necessary that we discuss the first ground challenging the sufficiency of the evidence to sustain the finding. We merely state in this connection that we have reviewed

the record and believe the facts and circumstances are sufficient so that the court-martial could have found beyond a reasonable doubt that both the negligence of the accused and the identity of the victim had been established. However, in the event of a re-trial it is suggested that consideration be given to developing further the evidence with a view towards clarification of those details which the accused contends are shrouded in uncertainty.

The accused was charged with voluntary manslaughter in violation of Article of War 93, 10 USC § 1565. The specification reads as follows:

"In that [accused] did, at Taegu, Korea, on or about 1 April 1951, feloniously, willfully and unlawfully, kill KO Tong Su by shooting him in the stomach with a sub-machine gun."

In instructing the members of the court on the elements of the offense, the law officer stated:

"The court is advised that the elements of the offense alleged and which is voluntary manslaughter, may be found in paragraph 180a, Manual for Courts-Martial, 1949, and the attention of the court is invited to the entire subparagraph referred to. The Law Officer desires to read a portion of that paragraph. Reading from the book, the last paragraph which begins on page 234 at the bottom:

"'Among the lesser offenses which may be included in a particular charge of voluntary manslaughter are an attempt to commit voluntary manslaughter, involuntary manslaughter, negligent homicide in violation of Article 96, assault with intent to commit voluntary manslaughter, assault with intent to do bodily harm, assault and battery, and assault.' Proof. Item (a) under 179a which in turn reads as follows:

"'Proof. (a) That the accused unlawfully killed a certain person named or described by a certain means, as alleged (requiring proof that the alleged victim is dead, that his death resulted from an injury received by him, that such injury resulted from an act of the accused, and that the death occurred within a year and a day of such act); and (b) *facts and circumstances, as alleged, indicating that the homicide amounted in law to the degree of manslaughter alleged.'*" (Italics supplied)

The law officer continued by charging the court as to the presumption of innocence, reasonable doubt as to guilt, reasonable doubt as to degree of guilt, burden of proof, and the credibility of witnesses; but he did not further amplify the instruction dealing with elements of the offense.

After the court closed for deliberations on the findings the president requested that the law officer assist the members in preparing a specification which would permit a finding of negligent homicide under Article of War 96, 10 USC § 1568. The law officer gave them the desired assistance, and the court then opened and announced a finding of guilty of that offense.

Article 51(c), Uniform Code of Military Justice, supra, provides as follows:

"Before a vote is taken on the findings, the law officer of a general court-martial and the president of a special court martial, shall, in the presence of the accused and counsel, *instruct the court as to the elements of the offense* and charge the court—. . ." (Italics supplied)

Paragraph 73a, Manual for Courts-Martial, United States, 1951, contains the following provision regarding instructions on elements of the offense charged: (page 112).

"After closing arguments have been concluded, the law officer (president of a special court-martial) *will instruct the court as to the elements of each offense charged.*" (Italics supplied)

This Court has held that the above provisions of the Code and Manual are mandatory, and that failure to comply therewith is error as a matter of law (United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951); and that such failure to give instructions in a case where a

**203**

plea of not guilty has been entered is prejudicial to the substantial rights of the accused (United States v. Clay, (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951). In the case of United States v. Rhoden, (No. 153), 1 USCMA 193, 2 CMR 99, decided February 26, 1952, we pursued the issue in more detail, particularly with regard to the giving of detailed instructions on the elements of the offense. In that case we held that the misinstruction of the law officer to the court on the elements of the offense of which the accused was convicted was error; and, in the light of a finding of guilty of a greater offense based upon instructions on a lesser offense, the error was prejudicial to the substantial rights of the accused, even though no request for instructions was made and no exception taken to the instructions as given. In the instant case, we are faced with the failure of the law officer to give any instructions on the elements of lesser included offenses.

Counsel for the government contend that the law officer did all that was required of him by the Code and Manual. They cite a portion of paragraph 73b, Manual for Courts-Martial, 1951, which reads as follows:

"To the foregoing [instructions on the elements of the offense, and charges on presumption of innocence, reasonable doubt as to guilt and degree of offense, and burden of proof] *explanatory matter may, but need not, be added.*" (Italics supplied)

Counsel then continue their argument by quoting from subparagraph 73c, Manual for Courts-Martial, 1951, which is as follows:

"*The law officer is not required to give the court any instructions other than those required by Article 51 (c) (73a, b).* However, when he deems it necessary or desirable, he may give the court such additional instructions as will assist it in making its findings. For example, he may, in an appropriate case, make a simple and orderly statement of the issues of fact, summarize and comment upon the evidence that tends to support or deny such issues, and dis-

cuss the law applicable thereto. The law officer *may advise the court as to what offenses, if any, are included in an offense charged and the possible findings the court may make by way of exceptions and substitutions.*" (Italics supplied)

They assert further that the law officer, in compliance with the above provisions of the Manual, advised the members of the court as to what the possible included offenses in the instant case were; and that, having met that requirement, he was under no obligation to do more.

Undoubtedly, the language of the subparagraphs of paragraph 73 of the Manual has caused uncertainty about the requirement extending to the included offenses. As shown by the quotations above, after stating that the law officer (president of a special court-martial) shall instruct as to the elements of each offense charged, the paragraph goes on to state that the law officer may advise the court as to what offenses, if any, are included in the offense and the possible findings the court may make by way of exception and substitution. In view of the express language of the Code, and the quoted language of the first part of paragraph 73 of the Manual, we do not believe it was intended by the latter phrase, "may advise the court," to substitute permissible advice for mandatory instruction. If a contrary conclusion were reached, then the provisions of the Manual would conflict with the Code and the latter would be controlling. (See Article 36 (a), Uniform Code of Military Justice, 50 USC § 611).

One of the standard instructions required to be given to the members of the court-martial is to the effect that if there is reasonable doubt as to the degree of guilt, the finding must be in the lesser degree as to which there is no doubt. Without some guidance or help from the law officer as to the elements of the lesser included offenses, it is difficult to determine how the members of the court-martial could properly apply that instruction. If the differences in the crimes are not given to the court, and only the most serious

offense is defined, there are no guideposts, and no limits, to help the court delineate the included offenses.

While the wording of the Act mentions offense in the singular, the wording of the Manual requires that instructions will be given to cover the elements of each offense charged. Included offenses are charged within the principal charge, and it is consistent with the Code and with the federal civilian practice to require that they must be defined in instructions, subject to the well-established rule that there must be some evidence from which a reasonable inference may be drawn that the lesser included offense was in issue.

The United States Court of Appeals for the District of Columbia, in the case of Williams v. United States (1942), 131 F2d 21, 22, in an opinion by Judge Vinson, stated:

"A basic defect of the charge is the failure to discuss and define the offenses included within the indictment. Rape was not defined generally, much less broken down into its constituent elements; naturally, as a result, the elements were not discussed or defined. The jury was not told what assault with intent to rape is, nor how it is distinguished from rape. The Court at the conclusion of its charge was asked to instruct with regard to assault with intent to rape and simple assault. It then proceeded to tell the jury that it might convict of those offenses but wholly failed to tell it of what those offenses consisted."

In the case of State v. Monte (1944) 131 Conn 134, 38 A2d 434, 435, the Supreme Court of Errors of Connecticut said:

"The situation falls squarely within the rule, supported by the decisions of many courts, that, if upon the evidence an accused can properly be found guilty of a lesser offense than that charged and the allegations of the information include the elements constituting the lesser offense, he is entitled to have the jury instructed as to it and charged that if they find proven only that offense he is to be found guilty of it. People v. Halliday, 237 App Div 302, 251 NYS 342; People v. Gilday, 351 Ill 11, 21, 183 NE 573; State v. Buchan, 219 Iowa 106, 257 NW 586; State v. Johnson, 184 Wash 493, 494, 52 P2d 317; 5 CJ 799, § 349; 6 CJS, Assault and Battery, p 1005, § 128d."

The Supreme Court of California in People v. Carmen (1951) 36 Cal 768, 228 P2d 281, 285, announced the rule of that state to be as follows:

"It is the duty of the court to instruct the jury in regard to any included offense which the evidence tends to prove."

In the case of Voigt v. Webb (1942) 47 F Supp 743, 746, a federal court in the state of Washington quoted with approval this rule: (quoting from State v. Gottstein, 111 Wash 600, 191 P 766, 767)

" 'The correct rule is that the lesser crime must be submitted to the jury along with the greater, unless the evidence positively excludes any inference that the lesser crime was committed.' "

We adopt in principle the rule announced in the foregoing cases and in applying it to the case before us we conclude the evidence required that the law officer, in his instructions to the members of the court, set forth the elements of the lesser included offenses. The record shows that the law officer had concluded the evidence might permit a finding of guilty of an included offense, and certainly the court verified the conclusion when it returned a finding of negligent homicide. Conceding that the law officer named the lesser included offenses in his charge to the members of the court, he nevertheless failed to set any standards to guide them. It is impossible for us to determine how they could arrive at a proper verdict when they were not informed as to the differences between the gradations of the offense. In practical effect they were limited as to the greater offense, but were permitted to speculate and guess on the boundaries of the included offenses. Correct procedure under military law requires

that, unless the evidence excludes any reasonable inference that a lesser crime was committed, the duty of the law officer is to carve out instructions covering the offense. He is the judge in the military system and he must furnish to the court the legal framework of all offenses which the evidence tends to establish. Unless he does so the accused has been denied a right which we conclude was granted by Congress and error as a matter of law follows.

In disposing of the question of prejudice, we call attention to our language in United States v. Rhoden, supra. In that case we said:

"It is not for us to determine what the court members would have found had they been properly advised on the elements. It is sufficient to show prejudice that in arriving at the finding there is a reasonable possibility they were misled by erroneous instructions."

Here we do not have erroneous instructions, we have no instructions on the offense of which the accused was convicted. However, the reasoning of that case is applicable in this instance. We can not and do not know what the members of the court-martial would have found had they been confined by appropriate instructions. While the finding involved a relatively simple offense there is no discussion in the Manual as to the elements of the offense, or the proof necessary to establish it, and we reject the government's contention that military personnel are trained in the law and that the name of the crime informs them of the elements. If this concept were adopted it would eliminate instructions in every case. Moreover, had an instruction been given in the presence of the accused and his counsel it would have afforded them an opportunity to know the limits imposed upon the court in determining the offense, and to narrow them if too broadly stated. There was no allegation in the charge as to any specific act of negligence and the finding returned as general in nature. Viewed from this level, the members of the court were permitted to operate in an open field

**206**

and to make a finding without disclosing its foundation. Having such latitude, and without a contrary showing in the record, there is a reasonable possibility that they may have considered negligence as being something different from or less than what an appropriate instruction would have required. Such being the case, there is a reasonable showing that the substantial rights of the petitioner were prejudiced.

The holding of the board of review is reversed and the case returned to The Judge Advocate General of the Army for action consistent with the views expressed herein.

Judge BROSMAN concurs.

QUINN, Chief Judge, (dissenting):

I agree that the law officer of a general court-martial has a duty to instruct the court on the elements of the offense charged, and on those included offenses which are supported by the evidence and which are issues in the case. The federal courts and most of the states have long adhered to this rule. Stevenson v. United States, 162 US 313, 40 L ed 980, 16 S Ct 839; Williams v. United States, 131 F2d 21, (CA DC Cir); see state cases collected at 41 CJS, Homicide, section 389. The clearly expressed legislative intent to bring court-martial procedure into accord with that prevailing in civilian criminal courts is persuasive that Congress, by Article 51(c) of the Uniform Code of Military Justice, 50 USC § 626, made this rule applicable to military courts-martial.

There is a qualification to this general rule which, although implicit in the majority opinion, should be made clear beyond peradventure. The rule does not require that the law officer always instruct on every lesser included offense. Thus, if the charge is murder, and all elements of the offense are clearly established, and not contradicted by a defense theory or evidence in support thereof, no one would contend that an instruction on simple assault should be given. This even though the evidence would necessarily establish commission of simple assault along with other included offenses. There must be some-

thing other than "evidence to support" the included crime. The law officer should instruct on those included offenses which are, measured by the evidence, reasonable alternatives to the specific offense charged. Implied is the caveat that doubts should be resolved in favor of the accused.

Accordingly, I have some doubt whether the law officer was required to instruct on negligent homicide on the evidence in this case. But this I need not decide. Assuming that his failure to do so was error, I fail to find prejudice within the meaning of Article 59 (a) of the Code, 50 USC § 634. First, the law officer mentioned the offense of negligent homicide. The name of the crime supplies its own definition—an unlawful killing coupled with simple negligence. It is difficult to say that this court did not have available for its deliberation a legal standard of guilt for this offense. Second, the evidence here, in my judgment, would reasonably support a finding of culpable negligence and involuntary manslaughter. While intoxicated, petitioner pointed at other human beings a loaded machine-gun which, by its very construction, was dangerous and easily discharged. This being so, he was not prejudiced by a failure to instruct on the considerably less serious offense of negligent homicide of which he was found guilty.

I would uphold the findings and sentence. The government should not be required to try again this individual, clearly guilty, because of a possible error which in no way harmed him.