UNITED STATES, Appellant

v.

RAYMOND E. MOREASH, Corporal, U. S. Army, Appellee

1 USCMA 616, 5 CMR 44

No. 715

Decided August 27, 1952

■■■■■■

LT. COL. Thayer Chapman, USA, and 1ST LT. Eugene L. Grimm, USA, for Appellant.

LT. COL. James C. Hamilton, USA, and 1ST LT. Thomas E. Cole, USA, for Appellee.

PAUL W. BROSMAN, Judge:

This case was certified to us on May 6, 1952, by The Judge Advocate General, United States Army, pursuant to the provisions of the Uniform Code of Military Justice, Article 67 (b) (2), 50 USC § 654. The accused, an 18-year-old corporal, was tried by general court-martial[1] at Chipo-Ri, North Korea, on December 23, 1951, under a specification alleging involuntary manslaughter, in violation of the Uniform Code of Military Justice, Article 119, 50 USC § 713. He pleaded not guilty, but by exceptions and substitutions was found guilty of negligent homicide, in violation of the Uniform Code of Military Justice, Article 134, 50 USC § 728. He was sentenced to receive a bad-conduct discharge, to forfeit all pay and allowances, and to be confined at hard labor for one year. Following approval by the convening authority, the record of trial was considered by a board of review in the office of The Judge Advocate General, United States Army. The board determined that the findings of guilty and the sentence were incorrect in law, set them aside, and ordered a rehearing. Thereafter The Judge Advocate General certified the following question to this Court:

"Was the failure of the law officer to instruct the court more specifically as to the elements of the lesser included offense of which the accused was convicted error so prejudicial as to require disapproval of the findings of guilty as a matter of law?"

II

The facts of the case are set out briefly hereafter. In the early afternoon of November 19, 1951, the accused was cleaning a Japanese-made .313 calibre pistol in the cooks' quarters, Headquarters and Headquarters Company, 38th Infantry Regiment. Also present in the tent at the time were four other persons, including the victim, Corporal John F. Bush. As he assembled the weapon, with which he had experienced some operational difficulty, the accused was seated on his cot, and the deceased

[1] CM 350776.

was lying on his own bed directly behind the former. In the course of the assembling process, the accused "pushed the clip in as you have to do in order to put the firing pin home." Thereupon the pistol was discharged, and the bullet struck Corporal Bush in the head, after having passed through the left sleeve of the accused's field jacket. The corporal was killed instantly. Apparently —unknown to the accused—a round of ammunition had been permitted to remain in the clip, or perhaps in the weapon's chamber. There can be no doubt of the unintentional character of the homicide. The evidence establishes fully that the accused and Corporal Bush were excellent friends; that there had never been ill-feeling between them; and that no words had been exchanged between the two at the time of, or immediately preceding, the incident resulting in Bush's death. The accused appeared stunned at the fruit of his conduct, burst into tears, and left the tent. The accused elected to remain silent at the trial, and no evidence whatever was offered in his behalf either prior to findings or in extenuation.

III

Following arguments of counsel and in addition to the usual instructions regarding reasonable doubt, burden of proof, and the like, the law officer charged the court-martial as follows:

"The court is advised that the elements of the offense are as follows:

"(a) That the victim named or described is dead; (b) that his death resulted from the act or omission of the accused, as alleged; and (c) facts and circumstances showing that the homicide amounted in law to the degree of manslaughter alleged.

"I read the court a definition of culpable negligence found on page 354 of the manual: 'Culpable negligence is a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of such act or omission. Thus the basis of a charge of involuntary manslaughter

**617**

may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another, even though death would not, necessarily, be a natural and probable consequence of such act or omission.'

"Discussion of the offense of involuntary manslaughter begins on page 354 of the 1951 manual. A table of lesser included offenses may be found, in regard to manslaughter, on page 539 of the 1951 manual."

The foregoing constitutes the only instructions of any sort afforded the court-martial concerning the offense charged, or lesser included offenses. The Judge Advocate General has asked whether the failure to instruct the court *more specifically* as to the elements of the lesser included offense of which the accused was convicted" [emphasis supplied] constitutes prejudicial error. At the outset we note that no instructions whatever concerning any lesser included offense were given the members of the court-martial. No lesser included offense was even mentioned in the law officer's charge—much less defined therein. We have already held that a reference to relevant paragraphs of the Manual for Courts-Martial does not constitute an instruction as to matters dealt with in mentioned portions of this legal source book. United States v. Gilbertson (No. 318), 1 USCMA 465, 4 CMR 57, decided July 22, 1952; United States v. Strong (No. 244), — USCMA —, 5 CMR 55, decided this date. The question before us here, therefore, is not whether the law officer should have instructed more specifically as to lesser included offenses, but rather whether he should have instructed at all. We think that he should have done so. Approached somewhat differently, the question certified by The Judge Advocate General amounts in effect to an inquiry as to whether this Court is willing now to depart from the principle laid down by a majority of its members in United States v. Clark (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952. The answer is that we are not.

**618**

## IV

Unlike the accused in the present case, the petitioner in United States v. Clark, supra, was charged with voluntary manslaughter. However, as here, he was found guilty of negligent homicide through the use of exceptions and substitutions. There the accused, who had been drinking heavily, entered a Korean saloon in which five Korean nationals were present. He left almost immediately, however, and returned some five minutes later. During his absence two separate shots, followed by a burst of continuous firing, were heard outside the barroom. Petitioner was armed with a "grease gun"—a .45 calibre submachine gun—a weapon known to be sensitive and dangerous. On re-entering the establishment he appears to have attempted to clear his piece, removing the clip, sliding back the bolt, and allowing one cartridge to drop to the floor. Thereafter he directed the barrel toward the floor, pressed the trigger, and replaced the clip. The testimony did not show clearly whether the bolt was retracted by petitioner after replacement of the clip. The weapon was strapped to Clark's waist with the grip against his right hip. At this point the position of the gun was changed from a 45 degree downward angle, and directed toward a group of three Koreans in the room. Almost immediately after having been warned in Japanese by the victim, petitioner, in some manner undisclosed in the record, discharged the weapon. A slug struck the Korean in the lower abdomen and he died shortly thereafter.

After using certain instructional language concerning the offense of voluntary manslaughter, the law officer spoke as follows:

" 'Among the lesser offenses which may be included in a particular charge of voluntary manslaughter are an attempt to commit voluntary manslaughter, involuntary manslaughter, negligent homicide in violation of Article 96, assault with intent to commit voluntary manslaughter, assault with intent to do bodily harm, assault and battery and assault.' . . ."

Apart from the quoted language, nothing was said to the court-martial on the subject of lesser included offenses, nor—as may be observed—was any attempt made to define negligent homicide, the offense of which the accused, Clark, was found guilty, or to furnish the members of the court with any sort of standard by which guilt of the crime might be measured. A board of review in the office of the Judge Advocate General, United States Army, affirmed the court-martial's findings of guilty of negligent homicide and the sentence. On appeal to this Court, we held that the omissions of the law officer constituted prejudicial error, and reversed the decision of the board of review, saying:

"We adopt in principle the rule announced in the foregoing cases and in applying it to the case before us we conclude the evidence required that the law officer, in his instructions to the members of the court, set forth the elements of the lesser included offenses. The record shows that the law officer had concluded the evidence might permit a finding of guilty of an included offense, and certainly the court verified the conclusion when it returned a finding of negligent homicide. Conceding that the law officer named the lesser included offenses in his charge to the members of the court, he nevertheless failed to set any standards to guide them. It is impossible for us to determine how they could arrive at a proper verdict when they were not informed as to the differences between the gradations of the offense. In practical effect they were limited as to the greater offense, but were permitted to speculate and guess on the boundaries of the included offenses. Correct procedure under military law requires that, unless the evidence excludes any reasonable inference that a lesser crime was committed, the duty of the law officer is to carve out instructions covering the offense. He is the judge in the military system and he must furnish to the court the legal framework of all offenses which the evidence tends to establish. Unless he does so the accused has been denied a right which we conclude was granted

by Congress and error as a matter of law follows."

We believe the facts of the case at bar to be indistinguishable from those of Clark regarded by us as material and controlling. Incidentally we believe that the state of the evidence provided even greater need here for an instruction as to negligent homicide than in the preceding case. Moreover, we note that whereas in Clark there was at least a reference to the existence of the crime of which the accused was convicted, here no slightest mention of negligent homicide, or of any other lesser included offense, was made by the law officer. True it is that the term "simple negligence" was used by the present charge. However, no effort was made to define the phrase, or to furnish the court-martial with any sort of guidance criterion. It is argued here, however, in line with the dissent in Clark, that since the accused, Moreash, was actually found guilty of the lesser included homicide, as to which no instruction was given, he could not possibly have been harmed by the law officer's omission. Our answer to this is that, had the court been fully and properly instructed, its members might well have returned findings of not guilty—that is, they might have deemed the homicide in question to have been a purely accidental killing. It is interesting to observe in this connection that the files of the Judge Advocate General's Office, United States Army, reflect that on rehearing under complete instructions, following reversal by this Court, the accused in United States v. Clark, supra, was found not guilty.

V

It follows from what has been said that the question certified by The Judge Advocate General, United States Army, must be answered in the affirmative. Consequently, the record of trial is returned to him with notation that the decision of the board of review is affirmed.

Judge LATIMER concurs.

QUINN, Chief Judge (dissenting):

I dissent.

Here, as in United States v. Clark

**619**

(No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952, I quite fail to find any prejudice resulting from the failure of the law officer to instruct the court specifically and fully on the elements of the crime of negligent homicide. The findings demonstrate that the court knew that negligent homicide was a proper lesser included offense within involuntary manslaughter. As I stated in the Clark decision, the name of this offense supplies its own definition. Further, the evidence points quite clearly, in my opinion, to gross and culpable negligence. I have no doubt that on this record, the accused could have been convicted of involuntary manslaughter. The accused was, therefore, benefited by the findings on the lesser offense and is in no position to claim prejudice here. It matters not at all that, on rehearing, the accused in Clark was found not guilty. We have no way of knowing what evidence was produced at the second trial, nor even what factors motivated the court in reaching its decision.

I feel obligated to invite attention to the fact that this Court is here to do substantial justice. This accused was convicted upon adequate legal evidence. I see little justification for ordering a rehearing merely because the law officer committed an error which was in no way prejudicial to the substantial rights of the accused. The accused was found guilty of a lesser crime than was warranted by the evidence. I would reverse the decision of the board of review and affirm the findings.