UNITED STATES, Appellee

v.

GEORGE H. STOUT, Private, U. S. Army, Appellant

1 USCMA 639, 5 CMR 67

No. 497

Decided August 27, 1952

LT. COL. James C. Hamilton, USA, and 1ST. LT. James A. Hagan, USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Kenneth A. Howard, USA, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Petitioner was tried in Korea upon two charges, alleging: (1) disrespect toward a superior officer; and, (2) willful disobedience of an order of a superior officer, in violation of Articles 89 and 90, Uniform Code of Military Justice, 50 USC §§ 683 and 684. He was found not guilty of the former, but guilty of the latter and sentenced to a dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for five years. The findings and sentence were approved by the convening authority and affirmed by the board of review. We granted accused's petition for review in order that we might make a determination as to (1) whether the evidence was sufficient to support the finding of guilty of willful disobedience, and (2) whether the law officer erred in not instructing on an included offense.

Accused was a member of Company A, 24th Infantry Regiment, serving in Korea. On the afternoon of August 24, 1951, the company commander told all squad leaders in the company that a patrol mission had been ordered for the following day, and that, except for emergencies, no one would be excused for sick call. Corporal Stevenson, accused's squad leader relayed the message to his squad and accused informed the corporal that he would not ac-

company the squad as he was going on sick call. The corporal replied that orders had been given by the company commander that unless it was an emergency no one would be excused. On the morning of August 25, when Corporal Stevenson ordered his squad to prepare for the patrol mission, accused reaffirmed his statement that he was going on sick call. The corporal and other members of the squad reported to the assembly area for patrol duty. The company commander was informed of accused's refusal to accompany his squad and so he ordered Stevenson to have accused report to him. Confronting accused, the company commander ordered him to go on the mission with his squad. The accused in what was described as a belligerent and hostile manner replied that he was not going and the only way the commander could get him to go would be to carry him. Thereupon, after a short interval of time, during which accused made no effort towards joining his squad, the commander placed him under arrest.

On this appeal it is contended that the evidence is insufficient to support the finding that accused willfully disobeyed an order of his superior officer. Paragraph 169b, page 322, Manual for Courts-Martial, United States, 1951, prescribes the elements to be proved to sustain the conviction. These elements listed therein are (a) that accused received a certain command from a certain officer; (b) that the officer was the superior officer of accused; and (c) that the accused willfully disobeyed the command.

In the instant case, there is no dispute that the accused was a member of Company A, 24th Infantry Regiment, and that Captain Hartung, the officer who gave the order, was the company commander, and superior officer of accused. The testimony of the various witnesses differs slightly in setting out the exact language in which the order was given, but, under any version, it is apparent that there was sufficient evidence from which the members of the court-martial could reasonably find that Captain Hartung ordered the accused to join his squad. Accordingly, there was sufficient evidence before the

court-martial to establish the elements listed under (a) and (b) above.

It is first contended by the accused that the finding as to the element listed under (c) is contrary to the evidence because by placing the accused under arrest the company commander prohibited him from complying with the command and consequently no "willful" disobedience resulted. We overrule this contention. The evidence shows that after the order of the captain and statement by accused that he would not go, several minutes elapsed without accused evidencing, by acts or otherwise, any intent to obey. The company commander had to accompany the patrol, the troops were moving, time was of importance, and accused was well aware of the situation. Furthermore, he had twice previously declared that he would not accompany the troops because he was going on sick call. His refusal was consistent with his previous declarations. We are, therefore, satisfied that if the order was to be executed immediately, a matter we subsequently discuss, that accused's statement that he would not obey, accompanied by his failure to make any move towards joining the squad or to announce any intent to do so in the interval of time between his statement of refusal and his being turned over to a guard, argued conclusively against his contention that his arrest was the reason he did not comply.

Accused next contends that the finding cannot be supported because the order was to be executed in the future. This contention is based upon the following provision of paragraph 169b, page 321, Manual for Courts-Martial, United States, 1951, which states:

"If the order to a person is to be executed in the future, a statement by him to the effect that he intends to disobey it is not an offense under Article 90, although carrying out that intention may be . . . ."

Counsel for accused argue that in the light of the above provision the accused cannot be found guilty of willful disobedience because the patrol had not

started, that the line of departure was some 300 yards beyond the place where the order was given, and its actual mission would not commence until the men had passed that line. The difficulty with this contention is that it ignores or overlooks well known military principles.

The order given by Captain Hartung cannot be construed to fix performance at some future time. The duty to obey the order arose when it was given. All of the testimony, facts and circumstances indicate that immediate compliance was demanded. Accused had been informed of the mission by his squad leader the day before departure, and the entire platoon had been alerted the night before. Prior to and at the time the order was given the men were either in formation or forming to go on the mission. Part were in the assembly area and part were on the move. Preparatory work had been completed. All had to reach the line of departure without delay. The captain was required to leave to lead his troops. Accused was aware of the situation as he testified to the drawing of ammunition and rations and to the departure of part of the patrol. It is unreasonable to conclude that, knowing this, he interpreted the order in any other light than that he was to comply forthwith. It matters not that the line of departure was some 300 yards away. Commanders cannot reasonably assemble their troops and establish their formation there. Tactical formations must be completed, fighting teams organized, and last-minute instructions given in assembly areas. As we understand it, a line of departure is an imaginary line projected onto the ground for control purposes. Troops either reach or cross that line at a given time; they must be ready to fight prior to reaching it; and they should approach in formation suited for battle. If a soldier could await the time that line is reached before complying with an order to join his patrol, a squad leader would be left uninformed as to the composition of his fighting team and coordination would be impossible. Orderly procedure would be cast aside and confusion would result.

Accordingly, under all the facts and circumstances of the case, the only reasonable construction to be placed upon the order is that it demanded immediate compliance and that accused so understood. His statements that he would not go and that it would be necessary to carry him to get him to go were sufficient under the circumstances to support a finding of willful disobedience.

It is further contended by accused that the court-martial members should have been instructed on the elements of the lesser offense of failure to obey, defined by Article 92, Uniform Code of Military Justice, 50 USC § 686. That Article provides "any person subject to this code who . . . having knowledge of any other lawful order issued by a member of the armed forces, which it is his duty to obey, fails to obey the same . . . shall be punished as a court-martial may direct."

This Court has held that the law officer must instruct on the elements of the lesser included offenses where they are reasonably raised by the evidence, and that failure to do so is error as a matter of law. United States v. Clark (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952. Conversely, we have held that where no issue of the lesser offense is reasonably presented by the evidence, no error is committed by the failure to instruct thereon. United States v. Roman (No. 191), 1 USCMA 244, 2 CMR 150, decided March 19, 1952. In the latter case we quoted from the opinion of this Court in United States v. Clark, supra, which stated:

"In that case the court-martial found the accused guilty of an included offense for which no instruction had been given. In the case now before us, the members of the court found the accused guilty of the offense charged and this included a finding on all the elements specified in the instruction. The evidence is sufficient to sustain the finding and so the question posed in this case is whether from the evidence there was any issue as to a lesser included of-

fense. If so, an instruction should have been given, otherwise not."

The case before us falls within the rule announced in the Roman case. Accused was convicted of the greater offense of willful disobedience, and we have determined that the evidence was sufficient to support the finding of guilty of that offense. Therefore, in assessing the necessity of giving an instruction on the included offense, the test to be applied is: Do the facts reasonably raise an issue as to the offense of failure to obey?

A reading of the Code definition of the lesser included offense reveals that its application to the facts of the present case is inappropriate. The order in the instant case was a specific command given directly to the accused by his superior officer. Accused's refusal to obey was deliberate and belligerent and his reply was couched in language of certainty. He told his commander that he would not go on the patrol mission unless carried, and he confirmed his defiance by showing no willingness or intent to join the patrol. A failure to obey connotes neglect or omission, and there is no evidence of that. On the contrary, there was an adamant defiance of authority which is inconsistent with a claim of neglect or omission. Accused testified, and while he gives a slightly different version of the order given by the Captain, he admits stating that the only way he would go would be by being carried. He justifies that statement by claiming his back needed treatment and that he was going on sick call. The posture of the evidence thus narrows to the issue of whether, because of his physical condition, the accused was justified in his willful refusal. If he was, he had not committed an offense; if he was not, then he was guilty of the crime alleged.

There was no substantial evidence in the record that accused was physically unfit to accompany the patrol. But assuming there was, the court-martial was permitted to determine that issue under appropriate instructions for willful failure to obey. It resolved the issue against accused and its finding is amply supported by the record.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur. •