UNITED STATES, Appellee

v.

RAYMOND C. FOX, JR., Private First Class, U. S. Army, Appellant

2 USCMA 465, 9 CMR 95

No. 837

Decided May 8, 1953

 █

LT COL Stewart H. Legendre, U. S. Army, LT COL Herman P. Goebel, Jr., U. S. Army, and 1ST LT Patrick H. Thiessen, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Richard L. Brown, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried in Yokohama, Japan, upon charges alleging that he, acting in conjunction with Private Robert F. Jacquet, committed unpremeditated murder upon a Japanese national, one Takamitsu Yura, by shooting him with a carbine. The court-martial found him not guilty of unpremeditated murder but guilty of involuntary manslaughter based on a homicide committed while attempting to perpetrate a battery upon the victim. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The convening authority approved the findings and sentence, after reducing the period of confinement to two years, and the board of review affirmed. This Court granted accused's petition for review, limiting the scope to the sufficiency of the instructions given by the law officer and the sufficiency of the evidence to support the findings. These issues will be disposed of in the reverse order from that stated.

Summarizing the evidence in a manner favorable to the finding, the record reveals the following facts █ and circumstances: That on the evening of September 24, 1951, Takamitsu Yura, a Japanese national, was employed as a civilian guard at the Enlisted Men's Club, Tachikawa Air Base, Japan; that at approximately 10:30 that night the accused and his companion, Private Robert Jacquet, were in the area behind the club and the accused mounted an upturned ping-pong table which was near the fence; that Yura approached, admonished him not to go over the fence, and grabbed at his leg; that Jacquet who was standing nearby, struck Yura with his fist, and he, Yura, loaded his carbine; that another Japanese national who had observed the incident ran toward the group as the accused jumped down from the table; that Jacquet grabbed the weapon and a scuffle ensued; that accused participated in the fight and during this affray Jacquet succeeded in gaining possession of the gun; that Jacquet struck Yura with its stock; that Yura grabbed Jacquet's legs and the latter fell to the ground; that as he lay on the ground Yura stood over him clinging to the gun, the muzzle of which was pointed directly at Yura's armpit; that as they struggled the gun discharged and Yura fell back wounded; and, that a short time later he died from the injury. The accused's version is somewhat different but principally he asserts he had abandoned the fracas before the fatal incident occurred.

We believe the evidence adequately

supports the finding returned by the court-martial. By amendment and substitution the accused stands convicted of involuntary manslaughter committed jointly with Private Jacquet. Paragraph 26d of the Manual for Courts-Martial, United States, 1951, describes a joint offense as "one committed by two or more persons acting together in pursuance of a common intent." Involuntary manslaughter, as defined by paragraph 198b of the Manual includes an unlawful homicide committed "without an intent to kill or inflict great bodily harm . . . while perpetrating or attempting to perpetrate an offense other than burglary, sodomy, rape, robbery, or aggravated arson, directly affecting the person." Here the evidence permits a finding of the commission of a battery upon deceased by both the accused and Jacquet. The death of the victim occurred while the two were involved in perpetrating that offense. Although the accused testified that the purpose of his participation was to obtain possession of the carbine for reasons of safety, his testimony merely raised a question of fact which was decided adversely to him. Since there is evidence to sustain the finding, the contention advanced in support of the second issue is overruled.

The foregoing holding on the issue of the sufficiency of the evidence requires that we consider the ▮▮▮▮▮▮▮▮ ▮ adequacy of the instruction. To better frame that issue we set out the charge upon which accused was tried, the instructions given by the law officer, and the finding returned by the court-martial.

The accused was charged with murder under Article 118, Uniform Code of Military Justice, 50 USC § 712, and the specification was as follows:

"In that . . . [accused], acting in conjunction with Private Robert F. Jacquet . . . did at APO 704 on or about 24 September 1951 murder Takamitsu Yura by means of shooting him with a carbine."

This is the accepted allegation for unpremeditated murder. However, the instructions given by the law officer were not precisely tailored to fit that offense.

They covered the entire field of murder and were couched in the following language:

"The court is advised that the elements of the offense are as follows: The charge and specification under the 118th Article, that the victim named or described is dead; that his death resulted from the act or omission of the accused, as alleged; and the facts and circumstances showing that the accused had a premeditated design to kill, or intended to kill, or inflict great bodily harm; or was engaged in an act inherently dangerous to others, evincing a wanton disregard of human life; or was engaged in the perpetration, or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson.

• • • • • •

"In connection with the crime charged, it should be noted that among the offenses which may be included in this particular charge of murder are manslaughter, negligent homicide in violation of Article 134, assault with intent to murder, and certain forms of assault."

The members of the court-martial must have considered the instruction of doubtful value as they did an outstanding job in discarding it and in searching through the Manual to determine an offense which they thought might be appropriate. When they finished their consultation they had convicted accused of manslaughter in violation of Article 119 of the Code, 50 USC § 713. Moreover, by exceptions and substitutions they had amended with particularity the specification so it read as follows:

"In that . . . [accused] acting in conjunction with Private Robert F. Jacquet . . . did at APO 704 on or about 24 September 1951, while attempting to perpetrate an offense directly affecting the person of Takamitsu Yura, to-wit, a battery, unlawfully kill the said Takamitsu Yura by means of shooting him with a carbine."

Thus the court-martial ended up by finding the accused guilty of a possible

**467**

lesser included offense of the one charged, and one upon which no instruction had been received by them. This procedure requires that we reverse unless the finding returned by the court-martial requires an application of a different rule than we announced in United States v. Clark (No 190), 2 CMR 107, decided February 29, 1952. In that case we stated:

". . . . Conceding that the law officer named the lesser included offenses in his charge to the members of the court, he nevertheless failed to set any standards to guide them. It is impossible for us to determine how they could arrive at a proper verdict when they were not informed as to the differences between the gradations of the offense. In practical effect they were limited as to the greater offense, but were permitted to speculate and guess on the boundaries of the included offenses. Correct procedure under military law requires that, unless the evidence excludes any reasonable inference that a lesser crime was committed, the duty of the law officer is to carve out instructions covering the offense. He is the judge in the military system and he must furnish to the court the legal framework of all offenses which the evidence tends to establish. Unless he does so the accused has been denied a right which we conclude was granted by Congress and error as a matter of law follows."

We fail to see how a detailed finding in the instant case prevents an application of the Clark rule. It may be that this court-martial hit on a happy solution of the problem but the accused was afforded no chance to meet the issue it decided was necessary to sustain its finding. There is respectable authority to the effect that the Government should not be permitted to try an accused on one theory and convict him on another when there is a fair probability that the change prejudiced his defense. Here we go a step further and have a court-martial seizing upon a theory not argued and apparently not considered by either party. If the case was tried on a theory of a killing in the perpetra-

**468**

tion of an offense, the record does not so disclose. Rather it suggests a theory of intent to kill or to do great bodily injury. The instructions, as given, are of little help in disclosing what was ultimately in issue as they cover the whole field of murder but are silent about a theory to sustain a finding of guilty of manslaughter.

To uphold the Government's contention we would be required to hold that it is not necessary to instruct if the court-martial announces the reasons for its findings and they substantially fit the discussion or the proof contained in the Manual. The difficulty with this argument is that it overlooks the accused as a participant during the trial phases. He is entitled to know generally the limits of the field in which the court-martial is to operate when deliberating. He has the right to resist the giving of improper instructions and to submit instructions which will confine the court-martial to the evidence provided and the theories pursued. He is entitled to submit instructions on his theory of defense, for clarification or for purposes of refinement. But he cannot intelligently submit requests or except to instructions if the court-martial can write its own law after it has retired. For the purpose of illustration, we point out that the accused had a theory of defense. He contended that whatever part he may have played during the first part of the fracas, his participation had ended, and, that the shooting occurred at some distance removed from him and at a time after he had voluntarily quit the fray. Had an instruction been given which indicated a theory of a killing while perpetrating a battery, a request for an instruction on withdrawal might have been proper. But more than that, without a specific request, the posture of the evidence was such that the court-martial might have found accused guilty of a battery only had it been properly instructed on all elements of the offenses reasonably raised by the evidence. Closely analyzed, this is one of those cases where the law officer paid no attention to the issues. The facts failed completely to establish an offense of murder and yet the court was instruct-

ed on all four subdivisions of Article 118, supra, including the taking of life while perpetrating a rape or burning a building. On the other hand, the only offenses reasonably raised by the evidence (involuntary manslaughter and battery) were undefined by instructions. The case closely approaches a situation where we could say, as a matter of law, that no instructions were given. We comprehend why the court-martial took over the task of instructing itself.

In disposing of the question of prejudice, we are guided by decisions of this Court which require us to hold the error prejudicial. We have already pointed out how, and in what way, the accused was denied a substantial right granted to him by the Code. Moreover, we have shown that the included offense of battery was reasonably raised by the evidence. While it is impossible for us to determine what finding the members of the court-martial would have returned had they been guided by some instructions on the offenses in issue, it is not necessary that we conclude a finding of not guilty, or guilty of a lesser included offense than that returned, would have been made had proper instructions been pronounced by the law officer. It is sufficient in determining prejudice to find there is a reasonable possibility that the court-martial was misled by the absence of any appropriate instructions. In this connection language from the Clark case, supra, is again pertinent:

". . . . had an instruction been given in the presence of the accused and his counsel it would have afforded them an opportunity to know the limits imposed upon the court in determining the offense, and to narrow them if too broadly stated. . . . Viewed from this level, the members of the court were permitted to operate in an open field and to make a finding without disclosing its foundation. . . . Such being the case, there is a reasonable showing that the substantial rights of the petitioner were prejudiced."

The holding of the board of review is reversed and the case is remanded to The Judge Advocate General of the Army for action consistent with the views expressed herein.

BROSMAN, Judge (concurring):

I concur in the opinion of Judge Latimer. I must say that I regard the present one as distinctly a border-line case in the area of criminal responsibility through participation as an aider and abettor. In United States v. Jacobs (No 152), 2 CMR 115, decided March 13, 1952, we used the following language:

"Inactive presence during the commission of an offense is clearly an insufficient link to guilt. The aider and abettor must share the criminal intent or purpose of the active perpetrator of the crime, and must by his presence aid, encourage, or incite the major actor to commit it. . . . The proof must show that the aider or abettor did in some sort associate himself with the venture, that he participated in it as in something he wished to bring about, that he sought by his action to make it successful. . . . The standard of relationship to the offense by which conviction as an aider and abettor must be measured, therefore, lies somewhat between proof of participation as a paramount agent, on the one hand, and speculative inference based on mere presence at the scene of the crime, on the other, and is made definite by the requirement of evidence of specific intent."

However, scrutinizing the evidence in a manner most favorable to the Government—as we must in dealing with a sufficiency problem—I cannot bring myself to conclude that the findings are not adequately supported—as we have evaluated sufficiency in previous decisions. At the same time I would not wish to go further than we are going here.

I understand the principal opinion to direct a rehearing and I agree. I am quite sure that the instant case is within the doctrine of United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952, and is not one of the sort represented by United States v. Baguex (No. 699), 8 CMR 106, decided March 13, 1953.

Chief Judge QUINN dissents.