UNITED STATES, Appellant

v.

KENNETH W. BURGESS, Private First Class,
U. S. Army, Appellee

2 USCMA 542, 10 CMR 40

No. 783

Decided May 25, 1953

LT COL Thayer Chapman, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellant.

LT COL Stewart H. Legendre, U. S. Army, and 1ST LT Bernard Landman, Jr., U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

This cause is before the Court on certification by The Judge Advocate General, United States Army, and the issue concerns the decision of the board of review which set aside the findings and sentence as incorrect in law and ordered a rehearing of the cause.

The accused was tried by a general court-martial in Bamberg, Germany, upon charges alleging assault with intent to commit rape. He pleaded not guilty and the court-martial found him to be not guilty of the offense charged but, by exception and substitution, guilty of the lesser included offense of indecent assault. He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for two years. The convening authority approved.

The board of review set aside the findings of guilty and the sentence and ordered a rehearing, holding that under the decision of this Court in United States v. Clark (No. 190) 2 CMR 107, decided February 29, 1952, the failure of the law officer to instruct the court-martial on the elements of the lesser included offense of which the accused was convicted constituted error prejudicial to the substantial rights of the accused. The Judge Advocate General certified the case to this Court on the following issue:

"Under the circumstances of this case, was the failure of the law officer to instruct the court specifically as to the lesser included offense of indecent assault, error so prejudicial to the substantial rights of the accused as to require disapproval of the findings of guilty as a matter of law?"

**543**

The facts and circumstances which gave rise to the prosecution of accused are as follows: On December 5, 1951, at approximately 11:30 p. m., the victim of the assault, a German national, was walking to a friend's home in Bamberg, Germany. As she walked along a path near the hospital she was accosted by the accused who was nude except for his undershirt. Accused grabbed the victim, threw her to the ground, held her by the wrists, pressed his knee against her stomach, tore off her undergarments and lay on top of her. The victim resisted and her cries for assistance were heard by a German man, who ran to the scene, took the accused off the victim and helped him put on his clothes. Presently, two other Germans joined the group and the accused was subsequently turned over to the military police.

The evidence of the defense showed that at about 4:30 in the afternoon of December 5 accused had joined two other soldiers in a cafe in Bamberg and while there had consumed a large amount of whiskey. In his testimony accused stated that after he had left the cafe he had procured a taxi for transportation "uptown"; that he remembered getting in the taxi but could recall nothing from that time until he awakened in a cell block under arrest.

The specification by which the offense of assault with intent to commit rape was charged was as follows:

"In that . . . [accused] did, at Bamberg, Germany, on or about 5 December 1951, with intent to commit rape, commit an assault upon Kunigunda Steck, by throwing her to the ground, tearing her underclothing, beating her about the body and laying on top of her."

Those portions of the law officer's instructions which define the elements of the offense are as follows:

"The court is advised that the elements of the offense are as follows: that the accused assaulted a certain person, as alleged; that the facts and circumstances of the case show the existence at the time of the assault of the intent of the accused to commit rape, as alleged. The court's attention is invited to the definition of assault, which is found under Article 128, together with the elements of proof of an offense of assault found on page 369, 370, and 371, where the definition of the word assault is used in the instructions read above. . . . The attention of the court is respectfully called to Appendix 12 of the Manual of the table of commonly included offenses. . . ."

By exception and substitution and with the help of the law officer, the court-martial found accused guilty as follows:

"In that . . . [accused] did, at Bamberg, Germany, on or about 5 December 1951, commit an indecent assault upon Kunigunda Steck by throwing her to the ground, tearing off her underclothing, and laying on top of her while he was in a semi-nude state, with intent to gratify his sexual desires."

Thus, it is apparent that the court-martial members concluded that the offense committed by the accused did not reach the level defined by the law officer in his instruction on the offense charged, but did reach a level of a lesser included offense upon which they had received no instructions. Accordingly, under the principles enunciated by us in United States v. Clark, supra, the decision of the board of review must be upheld unless there is a reasonable basis for distinguishing that case from the one at bar.

The discussion and proof of the offense of indecent assault in the Manual for Courts-Martial, United States, 1951, define that offense as follows (paragraph 213d(2), page 386):

"Discussion.—See 207 (Assault). An indecent assault is the taking by a man of indecent, lewd, or lascivious liberties with the person of a female, without her consent and against her will, with intent to gratify his lust or sexual desires. In a proper case indecent assault may be a lesser included offense of assault with intent to commit rape.

"Proof.—(a) That the accused as-

544

saulted a certain female by taking indecent, lewd, or lascivious liberties with her person; and (b) facts and circumstances showing that the acts were done with intent to gratify the lust or sexual desires of the accused."

Appellate government counsel contend that the finding returned by the court-martial was so specific and followed so closely the terminology of the Manual definition that there was no reasonable possibility that the court-martial considered the elements of the indecent assault to be different from those which an appropriate instruction would, of necessity, have included. We have recently disposed of a similar contention. In United States v. Fox (No. 837), 9 CMR 95, decided May 8, 1953, we stated:

"To uphold the Government's contention we would be required to hold that it is not necessary to instruct if the court-martial announces the reasons for its findings and they substantially fit the discussion or the proof contained in the Manual. The difficulty with this argument is that it overlooks the accused as a participant during the trial phases. He is entitled to know generally the limits of the field in which the court-martial is to operate when deliberating. He has the right to resist the giving of improper instructions and to submit instructions which will confine the court-martial to the evidence provided and the theories pursued. He is entitled to submit instructions on his theory of defense, for clarification or for purposes of refinement. But he cannot intelligently submit requests or except to instructions if the court-martial can write its own law after it has retired. . . ."

This is the type of case which points up with clarity the vice in permitting members of the court-martial to write their own definition of an included offense. By amending the specification to find the accused guilty of indecent assault the court members apparently overlooked an essential element of the offense. Here, the principal defense advanced by accused was that intoxication had so affected his mental capacities

as to render him incapable of forming a specific intent to commit rape. His claimed intoxication is the only circumstance in the record which could reasonably have influenced the court-martial to reduce the crime from that charged. Apparently, the members of the court, while finding his state of intoxication so great as to render him incapable of forming an intent to commit rape, nevertheless found he was sober enough to form a specific intent to gratify his lust and sexual desires. While that may not be entirely inconsistent, it is reasonable to assume that the court-martial members were not fully aware of the fact that specific intent was a necessary element of the offense of which they found accused guilty.

While it can be argued that there was no prejudice because the wording of the finding shows conclusively that the court considered specific intent, that argument fails for at least two reasons. First, the court was assisted by the law officer in drafting the findings and the mere copying of a phrase from the Manual either by him or by the president of the court does not establish that the court-martial fully appreciated the content and legal meaning of the phrase. It is extremely doubtful that the court-martial recognized that the element of intent to gratify one's desires placed the offense in a category different from an ordinary assault where general intent will suffice. Second, when considered in connection with the failure to instruct on assault, the prejudicial effect of the court-martial's actions becomes more apparent. As previously indicated both the assault charged and the one found include specific intent as an element. The most serious included offense, which does not require specific intent, is assault consummated by a battery. In view of the substantial evidence supporting accused's contention, there was clearly an issue as to whether he was so intoxicated as to possess the mental capacity to commit the crime found. Assuming that the accused had reached that state of mental incompetency, the court-martial would, of necessity, have to drop down the scale of included crimes to the as-

sault and battery offense. The prejudice in the procedure followed is that the body of each crime and their differences were not explained to the court-martial and it was left uncontrolled in its deliberations. It could have wandered far afield in seeking out Manual discussions. There was not a definition given on any of the necessarily included offenses and the proper elements of each could not have been known by the members of the court-martial unless they luckily pieced together statements found in various portions of the book. That method leaves too much to the imagination of members of the court-martial and it affords the accused no way of determining the formulae used for the findings. We have stated repeatedly that when there is evidence which fairly tends to establish the offense charged, or any one included, depending on which view of the evidence the court-martial takes, then there must be instructions given on those which are fairly in issue. Otherwise, the court-martial becomes the fact finder and the lawmaker. Clearly, Congress did not intend that the court-martial frame its own instructions in secrecy and thereby deprive the accused of his right to know what elements were being considered.

In United States v. Wray (No. 1307), 6 CMR 26, decided October 10, 1952, we disposed of a somewhat similar problem. There the offense charged and the included offense of which the accused was found guilty, required a finding of specific intent. There was evidence of intoxication from which the court-martial might have concluded that the accused did not have the capacity to form the requisite intent. No instruction was given on the effect of intoxication and we held this to be prejudicial error. We there stated:

"The offense charged and the offense of which accused was found guilty require a finding of specific intent. However, the law officer failed to apprise the court members that intoxication may be legally considered as affecting mental capacity to entertain a specific intent. Had they been so instructed they could have returned a finding of guilty of that lesser offense which requires no specific intent, i.e., assault with a dangerous weapon. We have held instructions to be inadequate in a case involving a similar omission. United States v. Drew (No. 422), 4 CMR 63, decided July 23, 1952. Since the maximum confinement which may be imposed for the offense of assault with a dangerous weapon is three years, it is clear the accused was prejudiced."

The holding in that case requires that we affirm the board of review in this instance. It would not have been inappropriate in this case for the court to have found the accused mentally unable to form a specific intent to gratify his lust or sexual desires and in that event a finding of assault could have been returned. The maximum confinement for that offense is less than that imposed in this instance and for that reason alone accused was prejudiced.

The decision of the board of review is affirmed.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):

I dissent.

My views expressed in the dissenting opinion to United States v. Burden (No. 1038), 10 CMR 45, decided this date, explain adequately why I do not concur in the majority opinion here.