UNITED STATES, Appellee

v.

RICHARD F. BURDEN, Private E–2, U. S. Army, Appellant

2 USCMA 547, 10 CMR 45

No. 1038

Decided May 25, 1953

LT COL James C. Hamilton, U. S. Army, and 1ST LT James A. Hagan, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The appellant was tried upon charges alleging offenses of burglary and as- sault with intent to commit rape. The court-martial by exceptions and substi- tutions found him not guilty of burglary

but guilty of unlawful entry on the one charge, and not guilty of assault with intent to commit rape but guilty of indecent assault on the other. He was sentenced to be discharged from the service with a bad-conduct discharge, to forfeit $55.00 per month for twelve months, and to be confined at hard labor for twelve months. The convening authority approved the findings and sentence but suspended execution of the bad-conduct discharge. The board of review affirmed and we granted appellant's petition for grant of review limiting the scope to one issue, namely, did the law officer err in not adequately instructing the court-martial.

## I

The facts necessary to present properly the issue are these: At about 9:10 p.m. on October 29, 1951, the accused broke open the door and entered the home of Yim Bong Keun and his wife, Yoon Yoo Soon. He began speaking to them in English which the two Koreans did not understand. Apparently they anticipated his purpose and sought to discourage him. The accused, not being deterred by their protestations, pulled on the woman's arm and pushed her to the floor. He got down on top of her, put his arm around her neck, and fondled her body. Yim attempted to pull accused off his wife, but he met with little success, so he called for help. Accused started to disrobe Yoon but before his efforts met with success, a house-boy employed by the American Army, and a Korean woman entered the room. The woman succeeding in enticing accused away from Yoon. According to both Yim and Yoon accused was intoxicated.

Accused was apprehended at the scene of this incident by Private Harold Lee, who characterized accused as "the drunkest person I have ever seen since I have been over here in Korea." Later

"In that . . . [accused] did, at Pusan, Korea, on or about 29 October 1951, in the night time, burglariously break and enter the dwelling of YIM BONG KEUN, with intent to commit rape therein."

that evening, Lieutenant John R. Spehar, who investigated the offense and visited the scene of the incident, testified that accused was under the influence of liquor. He described the area where the incident took place as being undesirable because houses of prostitution were located within it and they were in close proximity to the dwelling which the accused entered.

It was shown that the drinking orgy which terminated in this unhappy incident began about 5:30 o'clock in the afternoon of October 29. The accused was due to be returned to this country on October 31, 1951, and he was celebrating that anticipated trip in the company of several Korean fellow-workers. The accused claims that after consuming considerable liquor he was propositioned by two prostitutes but negotiations ended because a satisfactory financial consideration could not be agreed upon; that he became very angry and his Korean friends left him; and that he consumed more whiskey and became so intoxicated he remembers nothing that happened until he became aware someone was taking his identification tags. This was back in the company area after he had been apprehended.

## II

The law officer gave instructions on the offenses alleged and enumerated those possibly included. However, he failed to define any except the principal ones charged. Counsel for the accused submitted proposed instructions on voluntary intoxication and specific intent but the law officer declined to submit them to the court-martial.

In order to show clearly the difference between the offenses charged and the findings returned we set up the former in a column on the left and the latter in a column on the right:

"In that . . . [accused] did, at Pusan, Korea, on or about 29 October 1951, in the night time, unlawfully enter the dwelling house of YIM BONG KEUN."

"In that . . . [accused] did, at Pusan, Korea, on or about 29 October 1951, with intent to commit rape, commit an assault upon YOON YOO SOON by grasping her around the neck and covering her body with his own."

It should be clear that from the findings returned and the evidence presented, the offenses found █ were reasonably raised by the evidence and should have been the subject of complete instructions. Thus we are again faced with a situation where the court-martial found the accused guilty of lesser included offenses than those charged, and offenses upon which no instructions had been received. The error is fundamental and prejudicial to accused's rights under repeated holdings of this Court. See United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952; United States v. Ollie C. Williams (No. 251), 2 CMR 137, decided March 14, 1952; and United States v. Moreash (No. 715), 5 CMR 44, decided August 27, 1952.

In United States v. Clark, supra, we said:

". . . Conceding that the law officer named the lesser included offenses in his charge to the members of the court, he nevertheless failed to set any standards to guide them. It is impossible for us to determine how they could arrive at a proper verdict when they were not informed as to the differences between the gradations of the offense. In practical effect they were limited as to the greater offense, but were permitted to speculate and guess on the boundaries of the included offenses. Correct procedure under military law requires that, unless the evidence excludes any reasonable inference that a lesser crime was committed, the duty of the law officer is to carve out instructions covering the offense. He is the judge in the military system and he must furnish to the court the legal framework of all offenses which the evidence tends to establish. Unless he does so the accused has been denied a right which we conclude was granted by

"In that . . . [accused] did, at Pusan, Korea, on or about 29 October 1951, commit an indecent assault with intent to gratify sexual desires upon YOON YOO SOON by grasping her around the the neck and covering her body with his own."

Congress and error as a matter of law follows."

### III

One of the contentions advanced by the Government, namely, that the court-martial cured any error by █ its detailed exceptions and substitutions, has been answered recently in United States v Fox (No. 837), 9 CMR 95, decided May 8, 1953. In that case we stated:

". . . it [the Government's argument] overlooks the accused as a participant during the trial phases. He is entitled to know generally the limits of the field in which the court-martial is to operate when deliberating. He has the right to resist the giving of improper instructions and to submit instructions which will confine the court-martial to the evidence provided and the theories pursued. . . . But he cannot intelligently submit requests or except to instructions if the court-martial can write its own law after it has retired. . . ."

Here, as there, we fail to see how a detailed finding prevents an application of the Clark rule. It might be that this court-martial hit on one possible solution of the problem but the accused was not afforded a chance to know the limitations the members of the court-martial would impose on themselves. In effect, this court-martial seized upon a theory not argued and, for all the record shows, not considered by either party. To say (as does the Government) that detailed findings reveal that the members of the court-martial understood the necessary elements of the offenses of unlawful entry and indecent assault begs the question. We have nothing by which we can determine that these detailed findings were the result of a calm, clear understanding of the necessary elements of the offense rather than a coincidence resulting from a search of

the Manual to ferret out crimes which the court-martial felt it ought to consider. While we have every desire to encourage courts to benefit the accused by reducing offenses through exceptions and substitutions, we do not believe this acceptable unless the law officer has previously defined the offense. He is the member of the court who should advise on the elements of the offenses so that the accused will be afforded a fair opportunity to offer qualifying, clarifying or additional instructions on all offenses to be considered.

Narrowed to its ultimate result, to support the Government's contention, we would be required to hold that it is not necessary to instruct if the court-martial announces the reasons for its findings and they substantially fit the discussion or proof contained in the Manual. If we were to give effect to this argument, we would write the death knell to a salutary reform as the law officer's services would be really · unnecessary and unimportant as an essential part of a military trial. We cannot so lightly lay aside the plain terms of the Uniform Code.

### IV

The law officer named simple assault as a lesser included offense but again he failed to furnish the court-martial with any of the elements. We believe that offense was reasonably raised by the evidence. Here again, error was committed. We cannot be sure that the members of the court-martial understood clearly that if they found the accused was so intoxicated as to be incapable of forming a specific intent then they could return a finding of simple assault. In addition we have no way of ascertaining what elements the court-martial considered if they attempted to fit the facts to the crime of simple assault. When there are several included offenses, the elements may not vary greatly and the only prescribed way to have the differences pointed out is through the medium of instructions. If the court-martial is not given the pattern it must guess at the fitting. That is when error is committed and prejudice creeps in.

### V

As may be noted from our statement of facts, accused's counsel submitted proposed instructions concerning voluntary intoxication and specific intent. The law officer declined to instruct as requested, and submitted the case to the members of the court-martial without advising them on the issues stated in the proposed instructions.

We have held that voluntary intoxication may be considered in so far as it affects mental capacity to entertain a specific intent. United States v. Roman (No. 191), 2 CMR 150, decided March 19, 1952. This is the general Federal rule, Bishop v. United States, 107 F2d 297, 301–302 (CA DC Cir), and the general rule in military law as well. Manual for Courts-Martial, United States, 1951, paragraph 154a, pages 294–295. The principal offenses charged in this case require specific intents. Manual for Courts-Martial, supra, paragraph 208, page 373 (burglary); Manual for Courts-Martial, supra, paragraph 213d, page 385 (assault with intent to commit rape). All of the participants in this series of incidents testified that the accused was, to a greater or lesser degree, under the influence of intoxicants. Reasonably considered, the evidence was sufficient to permit the court-martial to find the accused guilty of one of the lesser offenses which does not include specific intent. Such being so, it follows that the law officer erred in failing to give the requested instruction on intoxication. United States v. Drew (No. 422), 4 CMR 63, decided July 23, 1952; United States v. Lookinghorse (No. 1124), 5 CMR 88, decided August 29, 1952; United States v. Charles F. Simmons (No. 505), 5 CMR 119, decided September 26, 1952; United States v. Wray (No. 1307), 6 CMR 26, decided October 10, 1952.

The Government argues that no prejudice resulted from this error, because neither unlawful entry nor indecent assault, the offenses found by the court-martial, involves a specific intent. We

concede that the offense of unlawful entry does not involve a specific intent, but we must conclude otherwise about indecent assault. We have examined relevant authorities dealing with this subject and we are constrained to follow the language of the present Manual which is plain and unambiguous. To make out a case of indecent assault according to the Manual, it must be shown that the accused took indecent liberties with the person of a female "with intent to gratify his lust or sexual desires." Prior military decisions are to the same effect. See United States v. Hansen, 10 BR–JC 165, 179–180.

The Government contends that defense counsel, by submitting the proposed instructions on the ▪ subject of voluntary intoxication, cannot be heard to complain. The argument continues that the proposed instructions did not state the law correctly and this relieved the law officer of the duty of giving any instructions on the subject. The argument is not persuasive. It is certain the proposed instruction was sufficient to put the law officer on notice that an instruction on voluntary intoxication was essential to a proper disposition of the case. We have shown that a request was reasonable in the light of the evidence presented and we can find no good reason why the law officer did not give the proposed instruction or one modified to fit the occasion. Recent Federal cases have held that failure to instruct under similar conditions is prejudicial error. Richardson v. United States, 150 F2d 58, 66 (CA6th Cir) (1945); Orloff v. United States, 153 F2d 292, 295 (CA 6th Cir) (1946); United States v. Marcus, 166 F2d 497, 504 (CA3d Cir) (1947); Patterson v. United States, 183 F2d 687, 690 (CA5th Cir) (1950).

The holding of the board of review is reversed and the case returned to The Judge Advocate General of the Army for rehearing or other action not inconsistent with the views expressed herein.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):

I dissent.

**552**

I cannot subscribe either to the logic of the majority opinion or to the propriety of the result. It is another and more glaring example of the fallacy of United States v. Clark (No. 190), 2 CMR 107, decided February 29, 1952, and kindred cases.

A stronger case could perhaps be made from the record, but let's accept the recital of facts set forth by the majority:

". . . At about 9:10 p.m. on October 29, 1951, the accused broke open the door and entered the home of Yim Bong Keun and his wife, Yoon Yoo Soon. He began speaking to them in English which the two Koreans did not understand. Apparently they anticipated his purpose and sought to discourage him. The accused, not being deterred by their protestations, pulled on the woman's arm, and pushed her to the floor. He got down on top of her, put his arm around her neck, and fondled her body. Yim attempted to pull accused off his wife, but he met with little success, so he called for help. Accused started to disrobe Yoon but before his efforts met with success, a house-boy employed by the American Army, and a Korean woman entered the room. The woman succeeded in enticing accused away from Yoon. According to both Yim and Yoon accused was intoxicated."

In other words the accused entered a man's house, threw his wife to the floor and, in his presence, and over his vigorous protests, started to tear the clothes off the victim in an attempt to rape her. He was prevented from consummating his purpose by the arrival of a woman and a boy.

The accused had been drinking, in fact he probably was drunk, but not so drunk that he didn't know what he wanted, and his actions undeniably indicate that he specifically intended to rape his victim. This is a concrete example of the adage that "actions speak louder than words."

Upon these facts the law officer instructed the court on assault with in-

tent to rape. He did not define indecent assault with intent to gratify sexual desires, the crime for which the accused was found guilty. In my opinion he was not called upon to do so. Such a lesser offense was not fairly raised by the evidence. Exercising his sound discretion in the matter, the law officer instructed on the only offense fairly raised by the evidence. We should not reverse for his failure to instruct on lesser included offenses unless we find that he was clearly wrong. He saw the witnesses; he had a complete picture of the trial. He was in a better position than we to determine what issues were fairly raised by the evidence, and we should not disturb his ruling unless we determine that he was clearly wrong.

In my opinion he was not clearly wrong in instructing on assault with intent to commit rape. He was clearly right.

The fact that the court found accused guilty of the lesser included offense of indecent assault doesn't really indicate that the evidence pointed to anything but the greater offense. It is simply an indication of sympathy on the part of the court because the accused had been drinking. To be realistic about it, the court was just giving the accused "a break."

Having got that "break" from the court-martial, the majority now "compounds the felony" by setting that finding aside and ordering a rehearing which to all intents and purposes will be equivalent to a finding of not guilty, because the witnesses can never be produced again at a trial, and the process of retrying "on the record" is a dubious one to say the least.

In other words "Justice will not be done."

According to the Uniform Code, our major obligation is to see that justice is done. True, we are required to guarantee the accused a fair trial. But we are not called upon to defeat the ends of justice by exaggerated technicalities. And yet this, I fear, is the inevitable consequence of the majority rule.

The law officer was not called upon to instruct the court on the effect of drunkenness here because such an instruction should be necessary only when the evidence indicates to the law officer that the accused was so drunk as to border on insanity or delirium tremens, or at least to be totally deprived of his sense of reason. The facts themselves negative any such condition. The facts themselves prove conclusively that the accused was in the exercise of a specific intent which would make instructions concerning it redundant and unnecessary.

The law officer realized this and exercised his sound discretion not to instruct upon it. He certainly was not clearly wrong, and under all the circumstances his judgment should not be interfered with.

In my opinion the evidence would clearly sustain a finding of guilty of the offense of assault with intent to commit rape. For some reason, good or bad, the trial court reduced the charge to indecent assault with intent to gratify sexual desires, resulting in a comparatively light sentence of twelve months' confinement and twelve months' loss of pay, with a bad-conduct discharge which was suspended. Our action will probably wipe the slate clean.

This, then, is not substantial justice. It is just the antithesis of it. It is defeating justice by the over-emphasis of pure technicality.

A guilty man reaps the harvest. The United States is side-tracked in its attempt to see that justice is done. Our public relations with a friendly neighbor are severely strained by the public knowledge that a fiendish crime can be perpetrated by an American soldier on an innocent victim and appropriate punishment of such an offender compromised and defeated by the unbelievable technicalities and meanderings of this Court.