UNITED STATES, Appellee

v

DAVID L. MORGAN, JR., Airman Third Class, U. S. Air Force, Appellant

8 USCMA 659, 25 CMR 163

*Captain Richard C. Bocken* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb*.

*Captain John W. Fahrney* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels*.

### Opinion of the Court

GEORGE W. LATIMER, Judge:

The events considered in this appeal transpired at Adana Air Base, Adana, Turkey. The accused and the deceased, Lombardo, were both hutmates and friends. However, after an evening of card playing, the deceased became angered at the accused, apparently because the latter walked to the snack bar, leaving him behind. Lombardo cursed the accused and attempted to goad him into fighting. The accused ignored the threats and insults and quietly proceeded to his hut with a group of airmen, stopping to pick up a camera along the way. The deceased tracked after him, baiting as he went but, not being content with verbal disputes, he swung at the accused with a piece of lumber and missed. Along with a group of other airmen, the accused went into his hut and laid upon his bed. Quietly he looked over some trinkets which he had acquired on foreign shores. Among the Athenian scarves and Turkish rings, the drachmas and kurus, was a knife which he had purchased from an Adanian hawker. At about this time the deceased approached and again offered battle. Accused did not accept the challenge and thereupon Lombardo became contrite and tendered his hand in friendship, but the accused declined to recognize the gesture. Lombardo had a reputation as an aggressive, belligerent individual, adept with his fists, and a person known to have used dangerous weapons. When he failed to stimulate the accused into combat, he turned to the group of airmen present, asking them if they would interfere if he hit the accused. Hearing a negative response, he moved forward and grasped the accused. A scuffle thus ensued, with impassioned fighting on both sides. Suddenly the bystanders saw a knife in the accused's hand and separated the two fighters. But the intervention was late as the hand that held the dagger had already plunged it into the assailant's heart. The deceased, belligerent to the end, took one last swing and fell to the floor mortally wounded.

The accused was tried for murder and convicted of voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The findings and sentence having been affirmed, the case is now before us for decision, as we agreed to consider whether the accused was prejudiced by being convicted of voluntary manslaughter without the court having been instructed thereon.

At the conclusion of the evidence, the law officer instructed on unpremeditated murder, involuntary manslaughter, assault and battery, and self-defense. The transcription of an out-of-court hearing indicated that trial counsel requested an instruction on voluntary manslaughter:

"TC: In addition to the instruction on the elements of unpremeditated murder, I ask the law officer and defense counsel to consider whether or not an instruction on voluntary man-

slaughter should be given. I believe that the question of adequate provocation, together with fear, has been raised by the evidence.

"IC [defense counsel]: I do not believe these issues have been raised. I do not want an instruction on voluntary manslaughter because I believe it would confuse the court. Voluntary manslaughter is not included in the theory or our defense.

"LO: Captain Williamson, if you do not request an instruction on voluntary manslaughter, I will not give it."

As a result of defense counsel's request, the instruction was not given. But the president of the court-martial was evidently confused by the omission of the crime as he stated:

"PRES: Certain of your instructions are not clearly understood, evidently, by the court. You have directed, I believe, that under certain conditions, we will find the accused either guilty or not guilty, as the case may be, of murder or involuntary manslaughter. Does this preclude a finding of anything less than murder or involuntary manslaughter? This is specifically why we wanted to see the instructions in black and white."

Immediately following this request, another out-of-court hearing was held in which both trial counsel and defense counsel suggested their views on the substance of the additional instruction. It was presented to the court in the following language:

"LO: With reference to the question of the president of the court, the court is further advised that there are other lesser included offenses to unpremeditated murder and/or involuntary manslaughter, and where these offenses are reasonably raised by the evidence, the court may receive further instructions on such offenses. You are instructed as a matter of law that self defense is an absolute defense to each and every lesser included offense under the charge of unpremeditated murder, and in connection with instructions previously given with respect to self defense, if you find that the accused acted in self defense, he is entitled, as a matter of law, to an acquittal."

It is to be noted that the elements of these other offenses "reasonably raised by the evidence" were never given to the court. It may be that the law officer was talking in the abstract, but in all events the court-martial found the accused guilty of a crime upon which it was not instructed.

The arguments with which the Government would have us support the findings and sentence include the doctrine of waiver, self-induced error, nonprejudicial error, and failure of the evidence to raise voluntary manslaughter. To accept the theories to support this conviction as the Government views them would require us to support a finding which was returned without guideposts and without intelligent information as to the formula used by the court. Rather than support that sort of rule, we prefer to use as our sustaining rod the case of United States v Clark, 1 USCMA 201, 2 CMR 107, which is essentially dispositive of this appeal. In that early decision, the accused was charged with voluntary manslaughter. The law officer instructed as to the elements of that offense and enumerated but did not discuss the possible lesser included offenses. The court-martial returned a finding of guilty of negligent homicide. On appeal, we reviewed those civilian cases which we thought were applicable. We concluded that a reversal was required, presenting our reasons in the following manner:

"We adopt in principle the rule announced in the foregoing cases and in applying it to the case before us we conclude the evidence required that the law officer, in his instructions to the members of the court, set forth the elements of the lesser included offenses. . . .

". . . we reject the government's contention that military personnel are trained in the law and that the name of the crime informs them of the elements. If this concept were adopted it would eliminate instructions in every case. Moreover, had an in-

struction been given in the presence of the accused and his counsel it would have afforded them an opportunity to know the limits imposed upon the court in determining the offense, and to narrow them if too broadly stated. There was no allegation in the charge as to any specific act of negligence and the finding returned is general in nature. Viewed from this level, the members of the court were permitted to operate in an open field and to make a finding without disclosing its foundation. Having such latitude, and without a contrary showing in the record, there is a reasonable possibility that they may have considered negligence as being something different from or less than what an appropriate instruction would have required."

Accord, United States v Burgess, 2 USCMA 542, 10 CMR 40; United States v Burden, 2 USCMA 547, 10 CMR 45; United States v Fox, 2 USCMA 465, 9 CMR 95; United States v Moreash, 1 USCMA 616, 5 CMR 44. The same principles should apply in the case at bar unless the blame for the error can be placed at the doorstep of the accused because he explicitly requested that an instruction not be given. We, therefore, pass on to consider that question.

The primary burden of insuring that the court-martial is instructed as to the elements of the lesser included offense rests with the law officer. United States v Clark, supra. For him to fail to so instruct if the lesser offense is raised reasonably is error. United States v Mundy, 2 USCMA 500, 9 CMR 130; United States v Williams, 1 USCMA 186, 2 CMR 92. Here the trial counsel requested an instruction on voluntary manslaughter, but the law officer desisted from so doing only after defense counsel's opposition. The board of review concluded the defense could not raise the error on appeal because it was self-induced. We believe that in so holding the board overlooked an obvious principle of law. In this instance, the request was that instructions on voluntary manslaughter not be given, and that was granted. But the effect of that request was to say that the court-

martial could not return a finding on that lesser included offense. The defense counsel did not induce the court to return that finding as he, in a sense, contended that a conviction on that basis could not be supported by the evidence. To illustrate the point, if, under the facts in this case, accused was convicted of unpremeditated murder and he now complains that the lesser included offense of voluntary manslaughter should have been instructed upon, he would be barred from making that contention on appeal because he induced the error. That is in substance the all-or-nothing theory, but we do not find that theory applicable in this instance for, while accused pleaded for that hypothesis, his client was furnished with a compromise finding which was not requested. Had he been found guilty of the greater offense, the finding could stand as we would have certainty that the court-martial found every element of unpremeditated murder. To state it more succinctly, the accused's guilt of the crime of which he had been convicted would be certain. United States v Snyder, 6 USCMA 692, 21 CMR 14; United States v Jackson, 5 USCMA 584, 18 CMR 208; United States v Mundy, supra. But in a situation such as is presented to us today, the court-martial used its own formula for conviction, and we have no means of ascertaining what elements it considered necessary to establish the offense. The same problem troubled us in United States v Clark, supra, as the following quotation indicates:

"One of the standard instructions required to be given to the members of the court-martial is to the effect that if there is reasonable doubt as to the degree of guilt, the finding must be in the lesser degree as to which there is no doubt. Without some guidance or help from the law officer as to the elements of the lesser included offenses, it is difficult to determine how the members of the court-martial could properly apply that instruction. If the differences in the crimes are not given to the court, and only the most serious offense is defined, there are no guide-

posts, and no limits, to help the court delineate the included offenses."

We have yet to answer the Government's valid contention that United States v Gibson, 3 USCMA 512, 13 CMR 68, is dispositive of this issue. The accused there was charged with unpremeditated murder but was convicted of voluntary manslaughter, although the court received no instructions as to that offense. Certainly the cases are on all fours in that regard. There, a majority of this Court affirmed the accused's conviction. There were, however, three opinions in that decision, and a close reading of that case indicates that the two Judges joining in the principal opinion did not reach a common ground for affirmance. That case came to us after we had decided Clark and its sister decisions. Judge Brosman, who wrote the principal opinion, pitted these earlier cases against United States v Baguex, 2 USCMA 306, 8 CMR 106, and United States v Arnovits, 3 USCMA 538, 13 CMR 94, and concluded that the Gibson case should join the ranks of the latter decision. He thus affirmed the findings and sentence upon the ground that a homicide had been committed and that we could cure the deficiency by affirming the findings because voluntary manslaughter was the lowest degree of the offense raised reasonably by the evidence. The Chief Judge concurred in this result, using as his criterion the fact that there was no probability that the accused would be convicted of a lesser offense or acquitted if voluntary manslaughter had been instructed upon. The author Judge dissented, finding that the instructional error made that case indistinguishable from United States v Clark, supra. These opinions speak for themselves, and if United States v Gibson, supra, brought confusion into the law, we are not disposed to perpetuate the uncertainty in this instructional field. Suffice it to say that before United States v Gibson, the law of this Court was as enunciated in United States v Clark, supra, and knowing that the diversity of views in the later case cast doubt on the earlier one, we believe that we should lay the matter to rest. We, therefore, revert to the principle that we cannot affirm findings on an offense which is raised as a reasonable alternative to the principal offense, absent the necessary instructions to guide the court-martial in its deliberation.

Accordingly, the decision of the board of review is reversed, and the record is remanded to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

Individual defense counsel specifically requested that no instruction be given on the lesser offense because he believed that it was not "raised" by the evidence and it was not "within the theory" of defense and, consequently, any instruction would "confuse the court." On this appeal the accused "desires to convert his own maneuver" into prejudicial error. United States v Dicario, 8 USCMA 353, 24 CMR 163. I would not permit him to do so. United States v Dicario, supra; Johnson v United States, 318 US 189, 201, 87 L ed 704, 63 S Ct 549 (1943); United States v Jones, 7 USCMA 623, 23 CMR 87. In the Johnson case the United States Supreme Court said:

". . . We cannot permit an accused to elect to pursue one course at the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him. However unwise the first choice may have been, the range of waiver is wide. Since the protection which could have been obtained was plainly waived, the accused cannot now be heard to charge the court with depriving him of a fair trial. The court only followed the course which he himself helped to chart and in which he acquiesced until the case was argued on appeal."