UNITED STATES, Appellee

v

ROBERT J. MORSE, Private E–2, U. S. Army, Appellant

9 USCMA 799, 27 CMR 67

800

No. 11,201

Decided October 7, 1958

*First Lieutenant Judson A. Parsons, Jr.,* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel John G. Lee, Captain Arnold I. Melnick* and *Captain John F. Christensen.*

*First Lieutenant Jay D. Fischer* argued the cause for Appellee, United States. With him on the brief were *Major Thomas J. Nichols* and *First Lieutenant Allen I. Saeks.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of twelve specifications which are laid under three separate Articles of the Uniform Code of Military Justice. He contends that at the trial a number of errors were committed to his substantial prejudice.

After his ice-cream vending machine had been broken into and the coins removed on two occasions, the operator reported the matter to the Criminal Investigation Division. Sergeant Weisenberg was assigned to the case. The machine was checked for fingerprints but none of a suitable nature were found. To trap the thief in the event he returned, the money changer and twenty coins inserted into it were coated with fluorescent paste and a powder which leaves a blue stain upon contact with the hands or clothing.

Sometime during the next three days the machine was again rifled. The agent reasoned that the thefts might have taken place during either the day or night. He decided he would start his investigation with the guards who were assigned to patrol the area at night. He went to Battalion Headquarters and talked to the Adjutant. The latter provided him with the names of nine persons who had performed guard duty in the area during the preceding three-day period. The Adjutant also telephoned the two units to which the men were assigned and advised them that Sergeant Weisenberg was coming down to examine the men and their clothing. The First Sergeant of the accused's organization was informed that certain men were to bring "their clothing, field jackets and ODs" to the orderly room. The accused was one of the men. Consequently, the sergeant directed the accused to "bring his clothes down to the orderly room."

When the accused reported to the orderly room, he was taken into the first sergeant's office. Sergeant Weisenberg identified himself to the accused, and looked at the accused's hands in the sunlight coming through the window. He found what appeared to him to be blue stains. He also examined, under an ultraviolet light, leather gloves that the accused had with him and he found what appeared to be "traces of fluorescent paste." Sergeant Weisenberg then read and explained Article 31 to the accused and advised him that he was suspected of larceny and damage to private property. The accused made an oral statement. Before evidence of the contents of the statement was admitted, defense counsel objected on the ground that the statement was the product of incriminative evidence which the accused had been improperly compelled to produce. The objection was overruled and the statement was admitted. Later the accused was questioned again. He and Sergeant Weisenberg "again went through Article 31." The accused made a further oral statement which was reduced to writing. Defense counsel objected to the admission of this statement on the ground that it was "induced" by the results of an illegal search and seizure. This objection was also overruled. A third statement was also made by the accused. This statement was made before the second had been transcribed. The accused was questioned in connection with the report of the rifling of a pinball machine in the Battalion Lounge. The accused was informed that he was also suspected of these offenses, and he was again warned under Article 31. He made a separate oral statement which was put into writing and signed by him. Defense counsel objected to this statement partly on the ground that it was "still tainted by being close in time to matters previously objected to" and partly on the ground that some of the contents were inadmissible because of the lack of a showing of *corpus delicti*. The first part of the objection was overruled, but the latter was sustained and a portion of the statement was blocked out before it was admitted into evidence.

The defense opened its case with testimony by First Sergeant Duda. He testified that on March 11, 1957, he was told to have the accused report to the orderly room with the clothing that he wore when on guard duty. At the completion of this testimony, defense counsel moved to strike from the evidence the accused's statements because they were obtained "as a result of forcing the accused to produce incriminating evidence prior to the statements being made." The motion was denied.

The correctness of the law officer's rulings admitting the pretrial statements in evidence is attacked by the accused. In substance, he argues that the statements were the result of evidence illegally obtained. The evidence which is said to be illegal is that relating to the examination of the accused's hands and to the order to produce the clothing he wore during the time he was on guard duty.

There is no error in the hand examination. Visual inspection of the person of an accused does not violate any constitutional right or any provision of Article 31 of the Uniform Code of Mil-

itary Justice. Such inspection does not require the accused to say anything or to produce evidence against himself. Cf. United States v Jordan, 7 USCMA 452, 22 CMR 242; United States v Musguire, 9 USCMA 67, 25 CMR 329. As the District Court pointed out in United States v Strickland, 62 F Supp 468, 471 (WD SC) (1945): "To observe that which is open and patent in either sunlight or artificial light is not a search." Nor, we may add, is it a statement within the meaning of Article 31.

The visual inspection of the glove also did not violate any of the accused's rights. Clothing worn by an accused at the time he is questioned in connection with an offense is certainly open to view. Nothing in the evidence shows that the glove was part of the clothing which the accused was directed to bring with him to the orderly room. The sergeant's testimony was limited to "field jackets and ODs." Consequently, we need not consider whether the evidence would have been admissible as part of a proper search and seizure, as contended by the Government, or whether it is of the class of evidence which cannot be subject to seizure under a search warrant. Cf. Harris v United States, 331 US 145, 91 L ed 1399, 67 S Ct 1098 (1947); United States v Guido, 251 F2d 1 (CA7th Cir) (1958). It does not constitute an unlawful search to look at outer garments worn by an accused; nor does it trespass upon his privacy to view such outer clothing with the aid of a particular kind of light. The evidence of the glove inspection, therefore, was properly admitted and there is no basis for the claim of taint in the latter statement. See United States v Bennett, 7 USCMA 97, 21 CMR 223.

In a further attack on the validity of the findings of guilty, the accused contends there is insufficient independent evidence to corroborate his confession in regard to the specifications of Charge I. These allege that on separate occasions the accused was derelict in the performance of his duty in that, while assigned as a guard, instead of guarding the property entrusted to him, he broke into it and stole its contents. Evidence was admitted to show the vending machine was broken into between specified days. It was also shown the accused performed duty as a guard during those periods, in an area in which the machines were located. In our opinion, this constitutes sufficient independent evidence to corroborate the accused's confession and to support the findings of guilty. United States v Evans, 1 USCMA 207, 2 CMR 113.

Finally, the accused contends he cannot be separately punished for the offenses charged. As previously pointed out, the three specifications of Charge I allege dereliction of duty by breaking into the ice-cream vending machine on three separate occasions and stealing the coins therefrom in violation of Article 109. Three of the specifications of Charge II allege that, on the same respective dates as the dereliction of duty offenses, the accused wrongfully damaged the same vending machine by prying it open with an iron bar. Three of the specifications of Charge III allege a theft of coins from the same machine but only two occasions correspond in date with the incidents alleged in Charges I and II. In addition, another specification of Charge II alleges damage to the ice-cream machine and one under Charge III alleges larceny of the coins from the machine on the same date. The accused contends he is punishable only on the basis of four counts of petty larceny and one of damage to the property.

Insofar as the damage and larceny specifications are concerned, the offenses are separate and distinct. The evidence sufficient to support the findings of larceny from the machine does not also show the nature and extent of the damage. See Manual for Courts-Martial, United States, 1951, paragraph 188b, page 344. And, conversely, proof of damage to the machine does not establish that the money was taken from it. Consequently, these offenses are separately punishable. Cf. United States v Brown, 8 USCMA 18, 23 CMR 242.

A different situation exists with regard to the dereliction offenses. Here, the specifications charge that each act of dereliction consisted of damage to, and theft from, the machine. The allegations make larceny and damage integral parts of the offenses charged. See United States v McVey, 4 USCMA 167, 15 CMR 167. Under the circumstances, proof sufficient to establish the dereliction in each instance necessarily proves the other offenses. These offenses, therefore, are not separately punishable. United States v Brown, supra; United States v Morgan, 8 USCMA 659, 25 CMR 163; United States v Modesett, 9 USCMA 152, 25 CMR 414. Cf. Gore v United States, 357 US 386, 78 S Ct 1280, 2 Led 2d 1405 (1958).

The decision of the board of review is affirmed as to the findings of guilty but reversed as to the sentence. The record of trial is returned to The Judge Advocate General of the Army for reference to the board of review for reassessment of the sentence.

LATIMER, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

The Chief Judge's opinion does not reach the important issue of whether there was failure to warn the accused of his right not to make a statement, for the reason a finding is made that the gloves were not produced pursuant to the direction of the First Sergeant. I cannot accept that view of the evidence because there would be no occasion for any clothing to be delivered by the accused to the orderly room for inspection absent the order. However, I reach his result on this facet of the controversy, for I conclude the accused was not a suspect at the time the order was issued within the meaning of Article 31(b), Uniform Code of Military Justice, 10 USC § 831. To my mind, the problem here narrows to a determination of when one, who with others had an opportunity to commit a crime, is a person suspected of an offense and entitled to be warned of his rights under military law.

In United States v Nowling, 9 USCMA 100, 25 CMR 362, this Court cast some light on the question, for while a majority held it improper to require a person suspected of not possessing a valid pass to produce one without first being given an Article 31 warning, they went on to state:

"We are not to be understood as holding that every routine or administrative check by an air policeman of a serviceman's pass or identification card must first be preceded by an Article 31 warning. However, *when a reasonable suspicion exists*, as in the instant case, that a pass violation is being committed, the suspect must be advised of his rights before an examination or surrender of his pass is requested." [Emphasis supplied.]

I touched on the question in my dissenting opinion in United States v Wilson, 2 USCMA 248, 8 CMR 48, for there I advanced the concept that Article 31:

". . . cannot be construed to apply to every person who happens to be asked a question concerning an offense possibly committed by him . . . the facts [must] be developed far enough that the party conducting the investigation has reasonable grounds to suspect the person interrogated has committed an offense."

In the case at bar, it was the lack of reasonable grounds of suspicion of any one person, and particularly this accused, when the order was given which causes me to reach my conclusion. At that time, no statement as such was made but the gloves were delivered. It is accused's action in identifying his gloves which I equate to a statement. At the commencement of his investigation, the agent reasoned that the culprit was likely to be one who had access to the building where the vending machine was located. A considerable number of individuals fell in that class, including the guards and the military and civilian personnel employed therein. Expediency made it desirable to inquire of the guards first since their number was the smallest. At this

stage of events, when the investigator sought to interview those in the guard class, he obtained the assistance of the battalion adjutant, who notified two units to have a total of nine men report with their clothing. If it was necessary to notify the accused of his rights—that he need not produce his clothing—it was necessary that all the guards be so notified. Up to this point, the investigation was routine. There were neither circumstances nor evidence which pointed suspicion toward any individual. Therefore, to say that the accused was at that time a person suspected of an offense is necessarily to say that all who had access to the building were such. I am unwilling to interpret Article 31 so broadly, for to do this would bring about undesirable and absurd results. Certainly to construe that Article in such a way as to seriously hinder military commanders in conducting showdown inspections of their commands to recover stolen Government property would cause a result which I am sure was unintended by Congress. The Article specifically provides that the warning is mandatory only when the person interrogated is suspected of an offense, and even if I take the definition of the word "suspect" most favorable to the accused, I do not find that the investigator imagined he committed the offense—this for the reason there was no evidence which would cause the most fertile imagination to suspect the accused.

After the accused appeared, the investigating agent noticed his hands and saw what appeared to be blue stains. This fixed suspicion on him and he thereupon became a suspect. Evidence then had developed to a point where he was linked with the crime and set apart from that class of persons whose only common denominator was their freedom to enter the building. This is the time when I believe a warning was required.

In several previous cases we held that the identification of clothing by a suspect at the direction of investigating agents was a "statement" within Article 31, and thus had to be preceded by the proper warning.

United States v Taylor, 5 USCMA 178, 17 CMR 178; United States v Holmes, 6 USCMA 151, 19 CMR 277. The only distinguishing feature I can find here is the one I discuss above. However, in this instance, a warning was given to the accused before he made any statement as a suspect, and anything he stated thereafter either orally or in writing was admissible.

For the foregoing reasons, I agree with the conclusion of the Chief Judge that there was no error in admitting the results of the examination or the pretrial statements of the accused which may have been occasioned thereby.

The other question involving multiplicity hardly bears comment for, assuming multiplicity, it is unimportant. The accused was convicted on fourteen specifications which carried a maximum sentence of six years and three months with a dishonorable discharge and forfeitures. He was sentenced to a year in confinement with permissible accessories. The staff judge advocate recommended dismissal of two minor offenses and correctly informed the convening authority that five years and three months was the maximum limit of confinement. The two specifications found to be multiplicious by the Court would not reduce the maximum period of incarceration below four years and nine months, so I see no good purpose in returning the record for reassessment of sentence. Article 59 of the Code, 10 USC § 859, applies equally to findings and sentence, and the two specifications which are considered multiplicious are so relatively unimportant that the error was harmless.

I would affirm the decision of the board of review.

FERGUSON, Judge (dissenting):

Although the majority were unable to agree on the reasons for their decision, I feel constrained to set forth my views in this dissent. I am unable to agree with the opinion of Judge Latimer that the accused was not a "sus-

pect" at the time his gloves were examined.

Warning under Article 31 of the Uniform Code of Military Justice, 10 USC § 831, must, of course, be given in appropriate cases both to "an accused or a person suspected of an offense" (Article 31(b)). That Congress, by enacting the Uniform Code of Military Justice, extended the coverage of the warning required by former Article of War 24, 50 USC (1946 ed) § 1495, to include suspects is recognized and discussed in United States v Wilson, 2 USCMA 248, 8 CMR 48. And this Court has held that the identification of clothing by a suspect at the direction of investigating agents is a "statement" within Article 31, supra, and must be preceded by proper warning. United States v Taylor, 5 USCMA 178, 17 CMR 178; United States v Holmes, 6 USCMA 151, 19 CMR 277.

A majority of this Court recently said:

". . . it is a liberal and enlightened, rather than a narrow and grudging, application of Article 31 that is best calculated to insure to the military the preservation of our traditional concepts of justice and fair play." [United States v Minnifield, 9 USCMA 373, 26 CMR 153.]

The use of the word "suspect," in a complaint for a search warrant, that the complainant "had cause to suspect and did suspect," etc., is not a sufficient compliance with a statute requiring the complainant to make oath or affirmation that he "believes" the stolen goods are concealed in some house or place described in the complaint. "Suspicion may be upon very slight grounds, and imports a less degree of certainty than belief." Humes v Taber, 1 RI 464, 470. See also Commonwealth v Certain Lottery Tickets, 59 Mass 369, 5 Cush 369. That state of mind, which in a reasonable man would lead to inquiry, is called mere "suspicion." Stuart v Farmers' Bank, 137 Wis 66, 117 NW 820. The word "suspicion" is defined as being "the imagination of the existence of something without proof, or upon very slight evidence, or upon no evidence at all." Gulf, C. & S. F. Ry. Co. v

Shieder, 88 Tex 152, 30 SW 902, 905.

With these thoughts in mind, let us examine briefly the facts in this case. Here, the Criminal Investigation Detachment investigator determined to interview the guards first because their known presence at the scene of the crime apparently made them logical suspects. Before the accused was ordered to produce his clothing, the eight other guards had been eliminated as suspects. The elimination of the others would, if anything, increase any suspicion of the accused. As this Court said in United States v Nowling, 9 USCMA 100, 25 CMR 362, "when a reasonable suspicion exists" warning must be given.

The facts in the instant case are such that it is difficult to deny the accused was under suspicion and therefore a "suspect." Suspicion is, of course, a product of a subjective state of mind but we must look for it in objective manifestations. If it can be shown that one is suspected of an offense, however ridiculous or nonexistent the grounds for suspicion might be, he is nevertheless a "suspect" and is entitled to Article 31 warning before interrogation. Here, it is clear to me the agent had grounds for suspecting the accused. The same mental process by which he chose to question the guards indicates he did so because they were a suspect group. The number in the group is not controlling. One might suspect everyone he is questioning and, if he does, the Article 31 warning, by its terms, must be given.

Nor can I adopt the view taken by the Chief Judge that the order to the accused to bring his clothing to the orderly room did not reasonably include the gloves. The investigator testified that:

". . . It was our intention to look at the hands, the gloves, and the OD clothing and the overcoats and other clothing which would have been worn by the guards while on duty at ordnance."

The first sergeant of accused's company testified that "[the Criminal Investigation Detachment] told me that

on the Sergeant Major's request to have the men that were on the guard that night to bring their clothing, field jackets and ODs to the orderly room." He also said: "All I think I told Morse was to bring his clothes down to the orderly room."

The evidence thus discloses that the investigator intended to examine the gloves and other clothing worn by the accused while on guard duty and that the accused was told to bring "his clothes" down to the orderly room. The gloves, therefore, can be considered as produced pursuant to that order, and a warning under Article 31 should have preceded the order. That the accused did not receive a warning of his rights as required by Article 31 prior to producing his clothing pursuant to order is undisputed. Article 31 is so important that this Court will not sanction any departure from its clear mandate and will not affirm any conviction where evidence obtained in violation of Article 31 is used, regardless of the presence of other evidence of guilt. See United States v Williams, 8 USCMA 443, 24 CMR 253, and cases cited. I would, therefore, reverse. For the sake of disposition of the case, however, though it is short of the reversal I would prefer, I join with the Chief Judge in his finding of multiplicity and return the record of trial to the board of review for reassessment of the sentence.