UNITED STATES, Appellee

v.

HAMILTON B. KING, Private First Class,
U. S. Army, Appellant
2 USCMA 397, 9 CMR 27

No. 948

Decided April 15, 1953

 

Lt Col James C. Hamilton, U. S. Army, Capt William C. Irby, Jr., U. S. Army, and 1st Lt James A. Hagan, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, and 1st Lt Richard L. Brown, U. S. Army, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Petitioner was convicted by a general court-martial for cowardly conduct in the presence of the enemy in violation of Article 99, Uniform Code of Military Justice, 50 USC § 693. He was sentenced to a dishonorable discharge, total forfeitures and confinement for fifteen years. The convening authority approved the findings and sentence, and the board of review affirmed. We granted the accused's petition for review and originally limited arguments to the single question of whether the evidence was sufficient to permit a finding that the offense was committed in the presence of the enemy. Subsequently we permitted accused to argue the question of the sufficiency of the instructions.

The facts of the case are brief. The accused was a member of Company D, 7th Infantry Regiment. His squad was attached to Company A of the regiment and he was an ammunition carrier for the squad. The commanding officer of the company, at about 11 a.m. on December 1, 1951, saw the accused at the company command post which was about 1500 yards to the rear of the battalion front lines. The officer ordered the accused to return to his squad which was located on a hill designated as 355. The accused replied, "I cannot go back, and I realize the consequences." The officer then explained the possible consequences attendant upon the refusal. Prior to this refusal the accused had informed the company executive that he would not rejoin his squad. This officer testified that on the first day of December, the day of the offense, D Company was in the same tactical position as it was during the latter part of November when he had observed the accused on hill 355. The tactical disposition of the battalion was such that during this period the rifle company and the machine gun squad were part of the friendly front lines.

I

The first assertion of appellate defense counsel is that the evidence is insufficient to sustain the ■ verdict of guilty, for there is no showing the accused was "in the presence of the enemy." This contention, our grant notwithstanding, merits little discussion. We have previously stated generally what constitutes in the presence of the enemy. In United States v. Sperland (No. 366), 5 CMR 89, decided September 3, 1952, we came to the conclusion that:

". . . . if an organization is in position ready to participate in either an offensive or defensive battle, and its weapons are capable of delivering fire on the enemy, and in turn are so situated that they are within

effective range of the enemy weapons, then that unit is before the enemy."

Applying the facts of this case to that definition, it seems clear the accused was in the presence of the enemy. Only a slight understanding of tactics is necessary to render that determination certain. Company A of the 1st Battalion, 7th Infantry Regiment, was occupying hill 355 which was part of the battalion "front line." A front line in Korea, whether it be the outpost line or the main line of resistance in a defensive situation, is close to the enemy. Any soldier who has manned a line would know that. The squads of the machine gun company (Company D) were attached to the rifle companies. Accused was assigned to a squad that was supporting A Company. This company was occupying hill 355 and this was the position to which accused was to proceed. He had been there, knew its location, and his answer to the order suggests a realization of the hazardous conditions existing. Not only would the position be well within artillery range, it would be within the range of small arms fire and vulnerable to raiding attacks. That accused was in the presence of the enemy is established beyond peradventure of doubt.

## II

The second question raises the sufficiency of the instructions given by the law officer. The instruction on the elements of the offense was as follows:

"The court is advised that the elements of the offenses are as follows, and I am reading from paragraph 178e, the proof section thereof, at page 333 of the Manual for Courts-Martial: (a) That the accused committed an act of cowardice, as alleged; and (b) that this act occurred while the accused was before or in the presence of the enemy."

The instructions listed only two elements, and they do not require a finding on the element of fear, which we have previously held to be a necessary element of the crime of cowardly conduct. United States v. Soukup (No. 533), 7 CMR 17, decided January 23, 1953. Government counsel seek to distinguish this case from Soukup on the grounds that here trial counsel in submitting the case to the court-martial read the following discussion from the Manual:

"'When going into battle, and the mere display of such apprehension would not constitute the offense, but the refusal or abandonment of a performance of duty before or in the presence of the enemy as a result of fear does constitute the offense.'"

This makes little, if any, substantial difference between the two cases. In the former, the court was referred to the specific Manual paragraph which was read by trial counsel in this case. The Court has repeatedly held that the law officer must be the source of instruction and that statement by counsel is not a satisfactory substitute. See United States v. Gilbertson (No. 318), 4 CMR 57, decided July 22, 1952. Here the quotation was not complete; the law officer did nothing to put the stamp of verity on the statement as given; defense counsel did not concede its accuracy; and we have no way of knowing whether the true test was applied by the court. It may be that the members appraised accurately the reasons for accused's behavior and found properly that fear motivated his refusal, but on the contrary they may have concluded that the mere statement by him that he could not go back, whether justified or unjustified, was sufficient to support the charge. Regardless of which assumption may be the true one, it is definite that the court was not guided by directions from the law officer and without this our best choice must be based on speculation and surmise. The following quote from Soukop, supra, is apropos here:

". . . . It is possible that the members of the court would surmise, from the reference in the instruction to 'an act of cowardice,' that proof of fear *was* necessary. It is also conceivable that, as officers in the military service, they would know that this mental state *was* the critical element of the offense charged. On the

**399**

other hand, they may also have believed that failure to obey an order to join the forward elements of one's company alone would constitute cowardly conduct—whatever its motivating force. We cannot approve an instruction which requires that we speculate on whether the court understood clearly all the necessary elements of the offense charged. . . . ."

The holding of the board of review is reversed, and the case is returned to The Judge Advocate General of the Army for reference to the convening authority for a rehearing.

Chief Judge QUINN and Judge BROSMAN concur.