UNITED STATES, Appellee

v.

GILBERT L. SMITH, Private E–2, U. S. Army, Appellant

3 USCMA 25, 11 CMR 25

No. 1560

Decided July 3, 1953

LT COL George M. Thorpe, U. S. Army, and 1ST LT Michael E. McGarvey, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, LT COL Thayer Chapman, U. S. Army, and 1ST LT Kenneth A. Howard, U. S. Army, for Appellee.

GEORGE W. LATIMER, Judge:

Accused stands convicted by a general court-martial of cowardly conduct in the presence of the enemy, in violation of Article 99, Uniform Code of Military Justice, 50 USC § 693. He was sentenced to a dishonorable discharge, total forfeitures and confinement for twenty years. Reviewing authorities upheld the findings but a board of review reduced the confinement to ten years. We granted the accused's petition to determine the sufficiency of the evidence, and the adequacy of the instructions.

On April 12, 1952, the accused was a member of a rifle company which was on the main line of resist- ▮▮▮▮▮▮ ▮ ance in Korea. On this date the accused refused to go on guard duty, and was taken to his platoon leader. The accused was told to return to his platoon and go on guard. He refused, and gave no reasons for his refusal. He was then taken to his company commander who directed him to return to his platoon, but he again refused, saying he wanted no part of the main line of resistance, and that he was afraid. The Captain then gave him a direct order to return to his platoon and told him he was to be a member of a patrol that was to reconnoiter that night. The mission of the patrol was to go beyond the main line of resistance some 250 or 300 yards to act as a security guard and warn others of any enemy approaches. The accused, after being fully advised of the consequences of a refusal, and after stating that he understood the order refused to comply therewith.

Accused contends the evidence is insufficient to establish that he was in the presence of the enemy and that his actions were motivated by fear.

With regard to the question of whether the evidence shows the accused was in the presence of the enemy, we think it shows clearly that he was. A lieutenant testified the accused's platoon was occupying the main line of resistance on the date in question. In reply to the question of whether forces opposed

them at that date he stated, "Well the enemy; the North Koreans. They had a battalion up there." The company commander also stated the accused's platoon was on the main line of resistance and when asked what forces were opposing them at that time replied: "There were enemy forces. The strength or disposition I only know generally."

In the case of United States v. Sperland, 1 USCMA 661, 5 CMR 89, decided September 3, 1952, after reviewing several authorities on the question of what constituted the presence of the enemy, we concluded:

". . . if an organization is in position ready to participate in either an offensive or defensive battle, and its weapons are capable of delivering fire on the enemy, and in turn are so situated that they are within effective range of the enemy weapons, then that unit is before the enemy. . . ."

And in United States v. King (No. 948), 2 USCMA 397, 9 CMR 27, decided April 15, 1953, in discussing the question of whether "the front line" was in the presence of the enemy, we stated:

". . . Applying the facts of this case to that definition [above], it seems clear the accused was in the presence of the enemy. Only a slight understanding of tactics is necessary to render that determination certain. . . . A front line in Korea, whether it be the outpost line or the main line of resistance in a defensive situation, is close to the enemy. Any soldier who has manned a line would know that. . . . Not only would the position be well within artillery range, it would be within the range of small arms fire and vulnerable to raiding parties. That accused was in the presence of the enemy is established beyond peradventure of doubt."

We think the showing of the presence of the enemy equally clear here. Accused's platoon was occupying a position on the main line of resistance op-

posed to enemy troops. That alone would be sufficient, but here we have more. He was to participate with a detachment which had a mission of patrolling beyond the main line of resistance for purposes of security and warning. This would be unnecessary unless enemy forces were operating in the area and attacks were considered as likely. Clearly the showing permits a finding that the accused was in the presence of the enemy.

We can dismiss with little comment the contention that the record does not establish fear. The captain who issued the order, in stating the circumstances surrounding the giving of the order to the accused to return to his platoon, testified:

"I asked that Private Smith be brought to the CP. Upon his arrival, I questioned him as to what his problem or question was. He stated that in effect that he did not wish to remain on the MLR; that he wished to be returned to Easy Rear, I asked him why, and he said that he just didn't want any part of the Main Line of Resistance or being on the line. *I asked him what his reasons were, and he insisted that he just didn't want to be on line; he was afraid and didn't want any part of it. . . .*" [Emphasis supplied.]

This testimony supplemented by other facts and circumstances from which fear was inferable was in no way contradicted or weakened by any other testimony. An admission by the accused that he would not go forward because he was afraid is, perhaps, the best evidence obtainable of the mental state of fear. Uncontradicted, as it is in this record, that admission is ample to sustain a finding that the accused's actions were motivated by fear.

We next turn our attention to the adequacy of the instructions of the law officer. Accused first contends there should have been an instruction on the lesser included offenses of failure to obey an order and failure to repair to an appointed place of duty. This contention must be overruled unless those offenses were fairly raised by the evidence as an alternative to the offense charged. We conclude the state of the evidence did not require such an instruction. In United States v. Stout (No. 497), 1 USCMA 639, 5 CMR 67, decided August 27, 1952, in considering a similar issue we stated: "A failure to obey connotes neglect or omission, and there is no evidence of that." We are unable to detect evidence of neglect or omission in this record. The acts of the accused show a thorough understanding of the orders given by the Captain and an equally thorough intentional defiance. His acts and conduct show definitely and positively a flat refusal to obey with a full appreciation of the consequences. There is not the slightest hint of any other possible excuse for his conduct.

It is next asserted by the accused that the instructions are inadequate in that there was no requirement that the court-martial find that the accused's actions were motivated by fear. We held in United States v. Soukup (No. 533), 2 USCMA 141, 7 CMR 17, decided January 23, 1953, that fear was one of the essential elements of the crime of cowardly conduct, and the court-martial should be so instructed before the accused can be found guilty. However, we have a different pattern of instructions in this case. The law officer charged in part as follows:

"This charge is made under Article 99, the pertinent portion of which I will read: 'Any member of the armed forces who before or in the presence of the enemy is guilty of cowardly conduct shall be punished by death or such other punishment as the court-martial may direct.' In breaking that down into the composite elements, let me say first, that you must find that the accused committed an act of cowardice, as alleged, namely that he refused to go on a patrol, and second you must find also that the accused was before or in the presence of the enemy.

"I usually refrain from discussing the evidence, however, in this one I

intend to discuss some of the evidence with you. Whether a man is suffering from fear, of course, will generally be an opinion with everybody else other than the individual himself; but, from the evidence which you have heard, you must determine whether you as a court, as court members feel that the accused committed an act of cowardice. You must determine that from the outward manifestations of fear that have been testified to, and on the question of whether the accused was or was not in the presence of the enemy, and the elements of the specification as to whether or not the accused is guilty of refusing to go on patrol. . . ."

Cowardice means want of courage to face danger and when that word is coupled in instructions with an explanation by the law officer that it must be determined by outward manifestations of fear, the members of the court-martial were apprised that they must find fear as a necessary element of this offense. Stated differently, they were fully informed of the fact that accused could not be found guilty of cowardly conduct unless his refusal to obey the order was motivated by fear. The instruction is not a model of clarity and the thoughts intended to be conveyed could be stated more aptly but the essential elements are included; and, as we have repeatedly announced in prior decisions, if counsel for accused believes that explanatory or definitive instructions are needed to clarify the charge, he should make appropriate requests. There being none requested in this instance the arguments touching on inadequacy are overruled. See United States v. Day (No. 703), 2 USCMA 416, 9 CMR 46, decided April 30, 1953.

One further contention by the accused bears answer. He complains that the law officer when giving his instruction commented on the evidence and that to do so is prejudicial error. The assignment is overruled for the following reasons. Shortly after giving his instructions the law officer states:

"With reference to the comments of counsel and myself, I charge the court that they are not to consider the testimony as reviewed by counsel and myself, but you are to consider the testimony as you best recall it being given by the witnesses themselves. It is not our interpretation that is important, it is your recollection of it."

We recently held in United States v. Andis (No. 712), 2 USCMA 364, 8 CMR 164, decided March 31, 1953, that a comment on the evidence by the law officer was not per se condemned by the Manual or by military law. We further held that we would only consider the matter if the comment was in some way prejudicial to the accused. Such was not the case here. There was no assumption of facts which were not in the record; there was nothing tilting the scales in favor of the prosecution; there was nothing argumentative about the comment; and there was no attempt to influence the court into adopting a construction advocated by the law officer. It is well within the bounds of fair instructional practice for the law officer to apply the facts to the law, particularly, when he further explicitly informed the members of the court-martial that they would not regard any comments made by him as binding on them.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.